## ROBINSON *vs.* THE NEW YORK AND ERIE RAIL ROAD COMPANY.

A general exception to the entire charge of a judge to the jury is unavailable for the purpose of raising any distinct points of error in the charge. It can only be sufficient where the charge consists of a single proposition; or where the whole scope of the charge asserts and explains a single question or principle.

In all cases, a rail road corporation, under the provisions of the general rail road act, or of any private charter, where it does not change or affect rights of property, or appropriate the same and make compensation therefor, must cross, intersect or run along streams and highways, &c., at its peril. If it alters, changes or affects the stream or the road, it must restore the same to its former state, so that the rights of third persons be in no way affected injuriously by such change; or the corporation will be responsible in damages for any injury sustained by reason of such omission.

Its liability does not depend upon the question of *negligence* or *unskillfulness.*

The rule of the liability of private corporations is precisely the same as that relating to individuals.

An act of the legislature, authorizing a company to construct a railway, does not give to the corporation any authority to invade private rights, without making just compensation. It merely gives a franchise, and the title and rights of a private corporation. It cannot confer upon the corporation any exemption for wrongs done to the rights of private property.

Robinson *v.* New York and Erie Rail Road Co.

Where, in an action against a rail road company, to recover damages for injuries to the plaintiff's land and buildings, arising from the overflowing of a stream, caused by the acts of the defendant, it appeared that the defendant had, in constructing its road, excavated and removed the banks of the natural stream, in order to conform the ground to the grade of the rail road, *it was held* that it was proper for the judge to charge the jury that if they should find, from the evidence, that the injury and damage to the plaintiff was occasioned by such excavation and removal, and that but for such excavation and removal the injury and damage would not have occurred, the defendant was liable.

In such a case an action lies, against the company.

APPEAL from a judgment entered at a special term, upon the verdict of a jury. The action was commenced in July, 1855, for the recovery of damages to the plaintiff's land and buildings, in the village of Corning, arising from the overflow of a stream, known as Monkey run. It was claimed that this overflow was occasioned by the obstructions placed in the stream by the defendant at the point where it crosses Erie avenue in said village. The cause was tried at the Steuben circuit, in June, 1857, before Judge JOHNSON. It appeared on the trial, that the defendant's rail road runs along Erie avenue, and where it crosses the stream in question, an excavation of the banks of the creek was necessary to conform the ground to the grade of the rail road. The defendant deepened the channel of the creek, and constructed two sluices for the passage of the water, ten feet wide each, and three feet deep. In June, 1855, there were three extraordinary floods in the creek. The highest of these floods occurred on the 30th of June, when a great quantity of gravel and earth was washed down the stream, and filled up the sluices, under the rail road, and covered the track of the road itself, five or six feet deep. This obstruction turned the water of the creek into Erie avenue, and from thence it ran into, and filled, the cellars of the plaintiff's buildings, and did other damage to his premises. Testimony was given by the defendant, tending to show that the sluices constructed by the defendant were sufficient to pass all the water of the stream in the highest flood that had ever been known in the creek, and testimony was also given, tend-

ing to prove that the flood of the 30th of June, and which did the damage to the plaintiff's premises, was much the highest flood that had ever been known in the stream. This evidence was not controverted by the plaintiff. The plaintiff proved that the bank of the creek on the side of the plaintiff's premises was, in its natural state, five or six feet above the bed of the creek; and that the defendant had cut down this bank in grading its track. And it appeared by the same evidence, that the defendant had at the same time lowered the bed of the creek, but precisely to what extent did not clearly appear. The defendant proved that the plaintiff derived title to the premises in question from Hiram W. Bostwick, who was the owner of the premises at and prior to the time the defendant's road was constructed; and that the plaintiff erected the buildings which were claimed to have been damaged by the flood, after the construction of the road. The defendant offered in evidence, a grant from Bostwick and other owners to the defendant, of the right and privilege of locating and constructing the defendant's road along Erie avenue, and of lowering the grade of the street, to conform to the survey and grade adopted by the defendant for the track of its road. This grant appeared to have been executed while Bostwick was the owner of the plaintiff's premises. This evidence was excluded by the court, and the defendant excepted. The judge charged the jury, amongst other things, that the general course and flow of streams on the surface of the earth, being governed and controlled by the formation of the surface, no one had any right to make any change or innovation upon the surface, so as to change the established course and flow of any stream, to the prejudice of another. That every person owning and occupying premises in the vicinity of a stream of water was entitled to have the natural banks and barriers remain unmolested, so far as was necessary for his protection against the overflow and diversion of the stream; and that any person digging down the bank, or removing a natural barrier, by reason of which such stream overflowed, or was diverted from

Robinson *v.* New York and Erie Rail Road Co.

its natural and established course, to the injury of another, was liable for the injury thus occasioned. That the defendant, although it had by law the right to cross streams in the construction of its road, was liable, if in crossing any stream, it removed the banks to such an extent as to occasion the overflow, or diversion of the water of such stream, by which individuals in the vicinity sustained injury. And if the jury should find from the evidence, that the injury and damage to the plaintiff was occasioned by the excavation and removal of the banks of the stream by the defendant, and but for such excavation and removal, the injury and damage complained of, would not have occurred, the defendant was liable in this action. The defendants' counsel requested the judge to charge, 1st. That if the jury were satisfied from the evidence, that the defendant, in the construction of its road, made provision for the passage of any flood that had ever before been known in this stream, and had exercised such caution and care, to provide against damage to others, as prudent men would exercise, in like cases, for the protection of their own property, then the defendant was not liable for the damage resulting from this extraordinary flood. And 2d. That the defendant, in the construction of its road, was in the exercise of a lawful right, and was not responsible when all reasonable provision and caution was observed to protect others against injury. That if the jury believed from the evidence, that the defendant in the construction of the road over the water way in question exercised as much caution as a prudent man would exercise in the protection of his property, if he owned both the road and the property affected, then the defendant ought not to be made liable to the plaintiff. The judge refused to charge as thus requested; and to the charge and refusal, the defendant's counsel excepted. The jury found a verdict in favor of the plaintiff for $3735; for which sum, with costs, judgment was entered, and the defendant appealed.

*S. Mathews*, for the appellant. . I. The judge erred in his charge to the jury. (1.) The true rule in cases of this kind is, that where any alteration is lawfully made in the natural course, or banks of a stream, the person making such alterations is bound to provide for the common and ordinary floods in the stream, and against such as from the experience of the past, might reasonably be expected to occur in the future, but not against uncommon, unexpected, and extraordinary freshets. The latter are regarded as providential, and against which, men of ordinary prudence and caution cannot be expected to provide. Damage resulting from such extraordinary freshets, is *"damnum absque injuria."* The judge, in his charge, seems to have lost sight of, or ignored the distinction here suggested. (*Bell* v. *McClintock*, 9 *Watts*, 119. *Inhabitants of China* v. *Southwick*, 12 *Maine Rep.* 238. *Mayor of N. Y.* v. *Bailey*, 2 *Denio*, 433. *Angell on Water Courses*, §§ 335, 336, 348, 349.) (2.) The judge erred, in charging the jury, that if they should find from the evidence, the injury and damage to the plaintiff was occasioned by the excavation and removal of the banks of the stream by the defendant, and but for such excavation and removal, the injury and damage complained of would not have occurred, the defendant was liable in this action. The rule, as laid down, would cast upon the defendant the whole risk of any damage that might occur to the property of individuals, however remote from the stream, and however prudent or cautious the defendant might have been in constructing its bridge in crossing the stream; no allowance is made for fortuitous or providential causes. This is contrary to the principle maintained in the cases cited.

II. The judge erred in refusing to charge the jury as requested by the defendant's counsel. The two propositions submitted by the defendant's counsel are substantially alike, and contain the true principle applicable to the case. If the defendant, in constructing its bridge, used the same caution as a prudent man would exercise in the protection of his own property, were he owner of both the road and the property

affected, and in the exercise of this caution, made provision for the passage of any flood that had ever before been known in the stream, the defendant could not, according to well settled principles of law, be made liable for the injury sustained by the plaintiff. (*Mayor of N. Y.* v. *Bailey*, 2 *Denio*, 433. *Angell on Water Courses*, §§ 335, 336. *Lapham* v. *Curtis*, 5 *Verm. Rep.* 371.)

*Wm. Irvine*, for the respondent. I. The question of law presented by this appeal, is whether under the provisions of the act of April 2, 1850, a rail road corporation in constructing its road, may cut down, dig away and remove the natural barriers of a stream of water, by means of which the water is diverted from its natural channel, thereby flooding and destroying the property of others, without being responsible for such injuries; provided that in constructing their road and in providing a water way under it, they use ordinary skill, care and prudence. This is the question which is in substance presented by the defendant's answer, and the only one involved in the exceptions to the charges and to the refusal of the court to charge on the trial. And on the part of the plaintiff it is insisted, (1.) That a corporation is liable, and to be held responsible, to the same extent as an individual owner of the bank and stream would be held liable in case he caused a diversion of the water, to the injury of others; and the legislature had no warrant or power to absolve rail road corporations from such measure of responsibility. (*Crittenden* v. *Wilson*, 5 *Cowen*, 165. *Bradley* v. *N. Y. and N. H. R. R. Co.*, 21 *Conn. R.* 305, 6.) (2.) But the statute does not profess to exempt corporations from such measure of responsibility, but simply to give them authority to acquire a right, equal to the right of an individual proprietor of the land and stream, so far as might be necessary in the due exercise of his franchise. (*Brown* v. *The Cayuga and Susquehanna Rail Road Co.*, 2 *Kern.* 487. *Angell on Water Courses*, § 331, *n. a. Fletcher* v. *Auburn and Syracuse R. R. Co.*, 25 *Wend.* 462. *Critten-*

*den* v. *Wilson, supra. Mahon* v. *Utica and Schen. R. R. Co.. Lalor's Sup.* 156. *Presb. Society in Waterloo* v. *Auburn and Rochester R. R. Co.,* 3 *Hill,* 567.)

II. But if any doubt existed upon any supposed conflict of authority as to the construction of this statute, the case of *Brown* v. *The Cayuga and Susquehanna R. R. Co.* has settled the doctrine. (1.) The 10th section of the act, incorporating the Ithaca and Oswego Rail Road Company, is in substance the same as the 5th subdivision of § 28 of the act of April 2d, 1850, notwithstanding the remark of the court in the case of *Corey* v. *The Buffalo, Corning and New York R. R. Co,* (23 *Barb.* 482,) to the contrary; the difference is simply in the terms used, conferring the *power* to do the *same thing.* In the one case the language is, " the said corporation may construct the said rail road across, or upon any road, highway, stream of water or water course, if the same shall be necessary; but the said corporation shall restore such road, highway, stream of water, or water course, thus intersected, to its former state, or in a sufficient manner not to have impaired its usefulness or value to the owner." See the other. " Every corporation formed under the provisions of the act, shall have power to construct their road, across, along, or upon any stream of water, water course, street, highway, plank road, turnpike, or canal, which the route of its road shall intersect or touch; but the company shall restore the same to its former state, or to such state as not unnecessarily to have impaired its usefulness. (*Sess. L. of* 1828, *ch.* 21, § 10. *Id of* 1850, *ch.* 140, § 28, *sub.* 5.) (2.) This construction of the legislative grant is in accordance with the doctrine of the earlier cases, and if as the learned judge remarks in *Corey's case,* the case of *Fletcher* v. *The Auburn and Syracuse Rail Road Co.* has been overruled, we suggest with all deference that it is good law nevertheless; and that the late case of *Williams* v. *The N. Y. Central R. R. Co.,* not yet reported, approves it well. (*Bradley* v. *N. Y. and N. H. R. R. Co.,* 21 *Conn. R.* 294. *Nicholson* v. *Same,* 22 *id.* 74.)

Robinson *v.* New York and Erie Rail Road Co.

*By the Court,* E. DARWIN SMITH, J.   The case, upon this appeal, sets out the charge of the judge at the trial considerably *in extenso,* and then states that to such charge the defendants' counsel did then and there except.   Such a general exception is unavailable to raise any distinct points of error in the charge.   It can only be sufficient where the charge consists of a single proposition, or where the whole scope of the charge asserts and explains a single question or principle.   At the conclusion of the charge, it also appears that the defendants' counsel submitted to the circuit judge two propositions, and requested him to charge in accordance therewith, which the judge refused to do, and for this refusal " the defendants' counsel did also then and there except."   If these propositions, thus submitted, contained the true theory or principle upon which the defendants' liability in this action depended, then the circuit judge erred in his refusal to charge as requested ; and his charge being in conflict with such propositions taken in connection with such request, was also erroneous in its general scope and meaning.   It distinctly appearing that the defendants had excavated and removed the banks of the natural stream whose overflow caused the damages for which the action was brought, the judge, as the final proposition upon which he gave the case to the jury, charged them that " if they shall find from the evidence that the injury and damage to the plaintiff was occasioned by such excavation and removal, and that but for such excavation and removal the injury and damage complained of would not have occurred, the defendants were liable in this action."   In the two propositions submitted by the defendants' counsel they claimed, in substance, that the defendants were in the exercise of a lawful right in constructing their rail road at the place in question, and that in the exercise of that right they were not responsible, when all reasonable prudence and caution was observed on their part. to protect others from injury.   The charge treats the defendant—a rail road corporation—as the private owner of property, using and improving it for its own benefit, and

like natural persons responsible for all direct or consequential injuries resulting to others from such use or improvement. The defendants' counsel claimed, in effect, that the defendants, as such corporation, were only liable for injuries resulting from *negligence* or *unskillfulness*, like municipal corporations or public officers acting in the discharge of a public duty. The rule of liability of private corporations is precisely the same as that of individuals. (9 *Wheat.* 904. 12 *id.* 40. 4 *id.* 688. 4 *Hammond*, 500, 514. 3 *Hill*, 529.) It is true that the defendants, under the general rail road act, were entitled to construct their road across, along or upon any stream of water, water course, street, highway, plank road, turnpike road or canal which the route of its road might touch or intersect, restoring the same to its former state so as not unnecessarily to have impaired its usefulness. (*Sess. L. of* 1850, *ch.* 140, § 28.) But I do not see that this act relieves the defendants from their liability in this action. The right of the defendants to construct their rail road across this creek is not denied, and is undeniable. But this act of the legislature merely gave authority to the defendants to cross this creek. It did not, and could not give any authority to them to invade any private right without just compensation. The force of a legislative grant of this kind is well declared in the case of *Fletcher* v. *The Auburn and Syracuse Rail Road Co.*, (25 *Wend.* 462,) recently reaffirmed in *Brown* v. *The Cayuga and Susquehanna Rail Road Co.*, (2 *Kern.* 487.) The legislative grant authorized the defendants to enter upon, take and appropriate to their own use, on making a just compensation therefor, such lands as they might require for the use of their said rail road, and to cross all intervening waters and streams. But the legislative grant could go no further, so far as it affected private rights. It exempted the defendants from all liabilities, as respects the public, to indictment for a nuisance or otherwise; but it left all rights of property unaffected. It gave merely a franchise, and the title and rights of a private corporation. It conferred and could confer no exemption upon the defendants

for wrongs to the rights of private property. (21 *Conn. Rep.* 294. *Williams* v. *The Central Rail Road Co.,* 16 *N. York Rep.* 97. 3 *Hill,* 567.) Under the charge in this case the jury have found that the injuries sustained by the plaintiff would not have occurred but for the excavation and removal of the banks of the stream, made by the defendants. Such removal and excavation were made by the defendants for their own use and benefit, and necessarily at their own risk, so far as the rights of others might be affected thereby. No one has the right to change or interfere with the flow, course, channel or banks of a natural stream, at the risk of others or to their prejudice. The legislature authorized the defendants to cross this stream, but it bound them, if they in any way interfered with the flow of the water on the banks of the stream, " to restore it to its former state, so as not unnecessarily to have impaired its usefulness. The defendants interfered with the banks and channel of the stream. Did they restore it to its former state, so as not to have impaired its usefulness ? They were bound so to restore it as to leave the rights of other persons in respect to the stream precisely as before they interfered with it—precisely as they stood in the former state of the stream and its banks. In all cases a rail road corporation, under the provisions of the general rail road act or of any private charter, where they do not change or affect rights of property or appropriate the same and make compensation therefor, must cross, intersect or run along streams and highways, or other roads, at their peril. If they alter, change or affect the stream or the road, they must restore it to its former state, so that the rights of third persons be in no way affected injuriously by such change, or they will be responsible in damages for any injury sustained from such omission. And this is practically the rule asserted by the judge at the circuit, as the basis of the defendants' liability, in this action. The defendants claim that they are not liable unless they are guilty of negligence or unskillfulness in making the erection or alteration involved in crossing a stream or road. The riparian owner

upon a stream, or the private owner of the lot situate upon a street or highway, except as against the public authorities, is entitled to have such street or highway remain in its former state. He has nothing to do with the question of negligence or unskillfulness in respect to a change of its banks or channel. The question for him, in respect to his rights, is simply and solely, is he damaged by the change or alteration made? If so, he is entitled to be compensated, to the extent of such damage. A man owning both sides of a private stream has a right to erect a dam upon his own land and use the water thereon, but he has no right to flow his neighbor's land or do him any injury by the erection of such dam. Such neighbor has nothing to do with the question whether the dam is or is not negligently or unskillfully constructed. He is not bound to submit to injury from a dam skillfully constructed and in respect to which no allegation of negligence could be maintained. The question for him is simply, is he injured, or not, by the construction of such dam? (5 *Cowen*, 165.) There is, it is true, a large class of cases where the rule of liability would be that claimed by the defendants in this case, where no action can be sustained for injuries received not resulting from negligence or unskillfulness or some omission of duty. These cases rest upon the *sic utere tuum ut alienum non lædas*, and embrace a large class of injuries to the relative rights of the citizen, redress for which can be based upon no other rule than this broad principle of equity and natural justice. But the plaintiff's right of action does not rest upon this principle. It is based upon the fundamental right of property, the right in and to the soil and to the things upon and pertaining to the earth's surface. The cardinal maxim, *aquæ curret et debet currere*, &c. implies that no one has the right to change or divert the course, direction or flow of a natural stream, to the injury of another. All men have a right to base their claims to property, so far as such claims relate to the earth's surface, upon nature's law, upon the assumption that the earth's surface is to remain substantially unchanged. Every change or

alteration of such surface, where such alteration involves an injury to others, is therefore a violation of natural right. And it is upon this violation that the plaintiff is entitled to maintain this action, independently of the questions of negligence or unskillfulness of the defendants. In the case of *Bailey* v. *The Mayor of New York*, 3 *Hill*, 531; 2 *Denio*, 433,) the action was sustained on the ground of negligence; and the rule is there stated as claimed by the defendants' counsel. The plaintiff in that case was a riparian owner below the defendant's dam, and the injury resulted from the breaking away of the dam. The construction of the dam was lawful, and the injury resulted from its negligent construction. If in this case the injury had resulted from the breaking away of the defendants' track-works, or artificial water-way, then the case would have been parallel with this case of *Bailey*, and the action could only be sustained, as in that case, on the ground of negligence. But if in the case of *Bailey* the damages had been caused by the giving away of the banks of the stream, or by an excess of water cast upon Bailey's land, in consequence of the construction of the dam, then the question of negligence or unskillfulness in the construction of such dam would not have been in the case, and the action would have been maintainable, as in this case, for an injury or invasion of the primary right of property of the plaintiff. It seems to me that there is a very obvious distinction between the two cases. This action might have been sustainable, perhaps, on the ground of the insufficiency of the water-way provided by the defendants, or for their neglect to keep it open and clear for the flow of the water. But the plaintiff is not driven to these grounds. The excavation and removal of the banks of the stream left the water to flow out of the natural channel of the creek and to overflow the plaintiff's premises. And this overflow the jury have found would not have happened but for such alteration and excavation of the natural banks of the stream. For the damages resulting from such alteration and excavation, I think this action clearly maintainable.

Besides the question arising upon the charge of the circuit judge, the case presents an exception to the refusal of the judge to allow the defendants to introduce in evidence an agreement signed by quite a number of citizens of Corning, consenting that the defendants lower the grade of Erie street, in which the defendants' track is laid. I cannot see that this instrument, if admitted, could have had any proper influence upon the merits in this case. It would absolve the defendants from any liability to damage for lowering the grade of that street, and I cannot see that it can have any further operation or effect. The plaintiff's premises are not on that street, and he did not sign this agreement, and it does not distinctly appear that it was so signed by any grantor of his. But if this had been otherwise, I do not think it could have had any proper influence upon the questions in controversy in this suit, and was therefore rightly excluded. The case, upon the whole, I think, was rightly disposed of at the circuit, and the judgment should therefore be affirmed.

Judgment affirmed.

[CAYUGA GENERAL TERM, June 7, 1858. *Johnson*, *Welles* and *Smith*, Justices.]

