THE PEOPLE OF THE STATE OF NEW YORK *vs.* THE ALBANY AND VERMONT RAIL ROAD COMPANY.

It seems that no positive obligation to *build* a rail road, either in whole or in part, rests upon the company from its having obtained a charter for that purpose. Nor can any clear and imperative obligation to complete the entire route of a road be deduced from the fact that the company has completed a portion of it.

The question of *abandonment,* is somewhat different from that of *construction.* The right to abandon does not inevitably result from the right not to build. It may be that a rail road company, having accepted a charter, obtained sub-

The People *v.* Albany and Vermont Rail Road Company.

scriptions to the stock, acquired the right of eminent domain, procured an assessment of damages on the faith of completing the road, finished the road, put it in operation, exacted tolls and fares, diverted travel, and assumed to become common carriers of passengers and merchandise, has also incurred some obligations to the public which it is bound to fulfill. The public must have some rights. *Per* HOGEBOOM, J.

Yet it is not by any means clear that a rail road company has not the right to abandon its whole road, if it elects to do so. *Per* HOGEBOOM, J.

But the right to abandon a *part* of a road necessary to the preservation of an unbroken line of rail road communication, if it exists, is not absolute and unrestricted, but may, in a proper case, be interfered with, or controlled.

Although, in ordinary cases, an appeal to the legislature, to take away the charter, or to the courts to forfeit it for nonuser, may be the more pertinent and available remedy, yet in extreme and urgent circumstances, where sudden and serious injurious consequences are likely to ensue, the remedy by injunction, to prevent the taking up of the track, or other dismantling of the road, or by mandamus, to compel its restoration, may be had.    Ils

APPEAL by the defendant from an order of Justice PECK-HAM, at special term, granted on the 1st day of October, 1860, restraining the defendant from taking up the iron rivets and fastenings from the track of its road, except so far as necessary for repairs or for the transportation of freight and passengers. The material facts bearing upon the motion are contained in the preliminary statement prefixed to Judge PECKHAM'S opinion upon granting the same.(*a*)   In addition thereto the defendant claimed to have satisfactorily shown, 1. That its road from Waterford to Eagle Bridge could not be operated profitably. 2. That the defendant's road had been connected at Johnsonville (some ten miles west of Eagle Bridge) with a rail road from Troy to Eagle Bridge, by which the same point of termination was reached, at Eagle Bridge, by a shorter and more eligible route, and that the defendant had by a vote of its directors resolved to terminate its road at Johnsonville, and to amend its articles of association accordingly. 3. That the defendant intended to change the route of its road from Johnsonville to Waterford by the way of Troy. 4. That the defendant was sustaining damages by a continuance of the injunction. '

(*a*) 19 How. Pr. Rep. 523.

The People *v.* Albany and Vermont Rail Road Company.

. *J. B. Gale*, for the appellant.

*J. H. Reynolds*, for the respondents.

HOGEBOOM, J.   A rail road charter, like any other legislative grant, is a contract between the incorporated company and the public.   When the act is not by its terms subject to repeal it confers certain irrevocable rights, and it imposes corresponding obligations.

. I think it in nowise alters the case that the rights and privileges thus conferred, and the duties thus imposed, are so conferred and imposed under a general law, in virtue of the provisions of which persons may associate or incorporate themselves.   They still hold under an act of the legislature, which lies at the foundation of all their proceedings, and is essential to give them vitality and force.

The obligations thus imposed are either express or implied ; *express*, when they are declared in positive terms in their charter ; *implied*, when they necessarily result from the express obligations assumed, or are essential to carry out the substantial objects of the charter.

In the present case, I am not aware that there are any express stipulations in the charter decisive of the question before us, or very directly bearing upon it.   There is no *express* agreement to build the road, either in whole or in part ; or to continue it ; or not to abandon it.   The statute provides that every rail road company shall start and run their cars for the transportation of passengers and property, at regular times to be fixed by public notice, and shall transport and discharge such passengers and property on the due payment of the freight or fare legally authorized therefor, and shall be liable to the party aggrieved in an action for damages, for any neglect or refusal in the premises.   These provisions, although plain and imperative, have nevertheless no decisive bearing upon the present case.   They do not contain, either expressly or by reasonable inference, any legislative

The People *v.* Albany and Vermont Rail Road Company.

mandate in regard to the length of the road, or the discontinuance of any portion thereof; or forbid the change of these regulations from time to time at the pleasure of the company upon reasonable notice.  If the obligation in question exists, it must exist, I think, as a matter of duty or implied obligation on the part of the company from the circumstances under which the charter was obtained and the road was built, or from the public considerations which bear upon the question.

I do not think any positive obligation to *build* the road, either in whole or in part, rests upon the company from having obtained a charter for that purpose.  They may not be able to procure the stock to be taken ; they may, upon a mature examination, become satisfied of the impracticability or unprofitableness of the road ; and in such case, it seems to me, they are not obliged to prosecute the work.  This matter is left, I think, to the sound discretion of the promoters of the enterprise.

Nor am I able to deduce any clear imperative obligation to complete the entire route of any road from having completed a portion of it.  There is indeed some reason for saying that the legislature may have been prominently induced to grant the charter by the consideration that it would open to public travel and to rail road facilities the region of country along the entire length of the route, and that they would not have made the grant, or conferred the right of eminent domain, except upon such condition ; and that it is a violation of plighted faith to stop short of the completion of the entire route.  But the obligation, on the whole, seems to me of too imperfect a character to come within the domain of the courts, and to be more appropriately left to the legislature by way of repeal of the charter, if the company do not respond to the just demands of the public.

The case is stronger still against the company where, after having commenced their rail road, they leave it in an incomplete, ragged and unsightly condition, after having obtained the charter and exercised the right of eminent domain, and

perhaps obtained an assessment of damages upon the theory of a road which was to be completed, and would thus operate as a benefit to the land owner whose property was taken. What would be said of a municipal corporation which appropriated certain land for a public street, procured an assessment of damages to the lot proprietors mitigated in amount by the supposed benefits and increased value to the lots which would result from the opening of the street, and then leave the land thus taken in a ragged, broken up and unsightly condition, without ever in fact opening the street for the public use. And yet the question is, what is the remedy? Can the municipal corporation be compelled to complete the public improvement, if in their sound discretion they ultimately conclude it is not needed for the public accommodation, and would be a public detriment instead of a public benefit? And can a rail road corporation be compelled to complete or finish a particular route, or any given portion of it, if in the opinion of their directors the interests of the public and of their corporation or association will not be subserved by it? Is not the remedy by an appeal to the legislative body, to repeal their charter, or by an action in the name of the people to forfeit their charter for nonuser, or by a private action for the damages actually sustained?

The question of *abandonment* is somewhat different from the question of *construction*. The right to abandon does not inevitably result from the right not to build. It may be that the company, having accepted the charter, obtained subscriptions to the stock, acquired the right of eminent domain, procured an assessment of damages upon the faith of completing their road, finished their road, put it in operation, exacted tolls and fares, effected to some extent a diversion of travel to their particular road, and assumed to become common carriers of passengers and merchandise, have also incurred some obligations to the public which they are bound to fulfill. The public must have some rights. They grant peculiar and exclusive favors and privileges. Have they not a

The People *v.* Albany and Vermont Rail Road Company.

right to use the road, and to require it to be kept open for public use?

And yet it does not by any means seem to me clear that the rail road company have not the right to abandon their whole road, if they elect to do so. They use their own cars—they furnish their own motive power. Ordinary vehicles cannot use their road, and in that aspect there is not the same obligation resting upon them as upon turnpike companies. Suppose the road unprofitable and the running of it attended with constant and serious loss; must the company be compelled to sink money forever? If this be so, who would ever invest capital in rail road enterprises? Is not the remedy—the sole remedy—of the public to forfeit the charter for nonuser, or to appeal to the legislature for a repeal of the charter. If an injunction will issue to prevent an abandonment of the road, then a mandamus will issue to compel the running of the road. The case is not precisely like that of *turnpikes*. There the public use their own vehicles, and must have the road in order. They have perhaps no other route; and ordinarily there is a special and express obligation in their charter to keep the road open and in good repair, for the use of the public.

The right to abandon a part of a road necessary to the preservation of an unbroken route of rail road communication is not so clear. Something is due to the public accommodation. An arbitrary spirit which seeks to take advantage of the necessities of the individual citizen, which subjects him to discomfort and inconvenience, to frequent interruptions in the route, and to make large and unreasonable exactions from him, would seem not only to be deserving of rebuke, but to some extent under judicial control. If a rail road bridge is impassable, or dangerous—if a portion of it is suffered to go to decay, or is in fact taken away, so as to prevent the crossing of a stream—if a rail road connection with a highway is so constructed as to make the highway impassable or dangerous, is there no remedy? Is there not a rem-

edy by compulsion to require the repair to be made or the broken link to be restored, and especially to prevent the link from being taken away—a bent of a bridge, for example, from being wantonly destroyed? This certainly would be so in the case of a bridge, if other rail roads were interested in its use; or even if there was a track for carriages or foot passengers required to be kept up.

Turnpike road companies have not been supposed to have the absolute right to abandon a part of their road. And practically, when they desire to do so, I believe they obtain permission from the legislature.

The case of *Rex* v. *Severn and Wye Railway*, (2 *Barn. & Ald.* 646,) is also an authority for saying that rail road companies have not been regarded by the courts as possessing an absolute right of abandonment. In that case a *tram* road was enjoined from abandoning a part of their road, where the evident object of abandonment was to favor a particular colliery, in which the directors were interested, at the expense of another colliery, which had an interest in the portion of the road sought to be abandoned. And it was held that the public accommodation was the controlling criterion by which to determine the question. But this case is said to have been one where the act of parliament provided that the public should have the beneficial enjoyment of the same, and the court by mandamus compelled the company to reinstate the abandoned portion of the track.

If rail road companies have an unqualified right of abandonment of part of their railway, then highway crossings may be left unprotected; bridges may be suffered to go out of repair or be partially removed; ferries may be discontinued; sudden breaks and interruptions of railway travel may be effected by the companies, with impunity.

I incline to think, therefore, the right is not absolute and unrestricted, but that in a proper case interference may be had; and that although, in ordinary cases, an appeal to the legislature to take away the charter, or to the courts to forfeit it

for nonuser, may be the more pertinent and available remedy, yet that in extreme and urgent circumstances, where sudden and serious injurious consequences are likely to ensue, the remedy by injunction to prevent the taking up of the track, or other dismantling of the road; or by mandamus to compel its restoration, may be had.

It remains to consider what should be done in this particular case; and whether the circumstances are such as to justify or require the continuance of the injunction heretofore issued.

1. The abandonment of the road from Eagle Bridge to Johnsonville does not seem obnoxious to any very serious objections. There are two rail road tracks traversing that distance. An agreement has been made to run the cars of this road upon the Troy and Boston road. The distance is shorter; the route equally eligible; the company have resolved to terminate at Johnsonville, and only postpone altering their articles of association to that effect, that they may not incur the loss of their rails and other movable property by declaring the abandonment before the removal is made, and by the abandonment rendered incapable of being made. I think the case comes within the provisions of section 13 of chapter 282 of the laws of 1854. (2 *R. S.* 693, *5th ed.*)

2. The directors of the company are doubtless competent, by a vote of two-thirds of their number,. to *change* the route of their road from Eagle Bridge or Johnsonville to Waterford Junction; but no such vote has been taken; nor is the intent clear to make such change. Moreover, this abandonment will be attended with some public inconvenience— will subject parties having business on the road to the necessity of traveling a more circuitous route—will require the transhipment of freight—is not apparently founded upon any controlling motive of public interest or accommodation, and the refusal to permit it, for the present, will not apparently prejudice the defendants to any material extent. I am inclined, therefore, to think that the injunction granted

at the special term should be continued until the hearing; except as to that portion of the road between Eagle Bridge and Johnsonville, as to which portion I am inclined to think it should be dissolved. The costs of the parties, on this appeal, should abide the event of the action.

GOULD, J. I think no *mandamus* could issue, to compel an insolvent company to continue the running, at a loss, of any rail road; unless the court is to lend the money to enable the company to comply with the writ.

I concur in the first conclusion of Judge HOGEBOOM, but not in his last.

PECKHAM, J. The proposition of brother GOULD is not the less sound because it has no application to this case. This company is admitted to be entirely solvent; and its present lease is at the rate of nearly fourteen per cent upon the amount invested. As to the modification of the injunction proposed, I do not see sufficient reason to change the opinion carefully formed when the case was before me at special term. Though I have not had opportunity to re-examine the point very fully.

Order continuing injunction until the hearing.

[ALBANY GENERAL TERM, March 4, 1861. *Gould, Hogeboom* and *Peckham,* Justices.]