NEW YORK PRACTICE REPORTS. 427

People, *ex rel.*, Town of Schaghticoke agt. Troy and Boston Railroad Co.

## SUPREME COURT.

### THE PEOPLE, *ex rel.*, THE TOWN OF SCHAGHTICOKE agt. THE TROY AND BOSTON RAILROAD COMPANY.

A *railroad company*, organized under the general statute of the state (1850), is required, in *crossing a highway*, to restore the highway thus crossed to its former state. or to such state as not unnecessarily to impair its usefulness.

And where it becomes necessary, in crossing a highway, that a *bridge* should be built over the railroad to restore the highway to its usefulness, the railroad company are bound to build the bridge and *continue it in repair*, as long as the highway exists, and the corporation is allowed to enjoy the lawful exercise of its franchise.

The mere *abandonment of the railroad and the removal of its track, and its entire disuse* is not enough to deprive the railroad company of the privileges of its franchise or to absolve it from maintaining and keeping in repair such bridge.

A *mandamus* is the proper remedy to compel the railroad company to keep and maintain the bridge in proper repair.

*Albany Special Term, June,* 1869.

THE Albany and Northern railroad company formerly built and used and occupied a portion of its road across and under the public highway, leading from the village of Schaghticoke to the south in said town of Schaghticoke.

The railroad on its surface was forty-five feet below the surface of the highway at the place of said crossing, and the company built a bridge across said railroad track, for the use of the travelling public.

The title to the railroad was subsequently transferred to the Albany and Vermont railroad company, and afterwards the Troy and Boston railroad company, became the assignee of all the right title and interest before held by the Albany and Vermont railroad company. The track of the road has been demolished and disused for railroad purposes, since September, 1860. The bridge was kept up until about one year ago, when it became dangerous and was taken down and removed by the superintendent of the Troy and Boston

railroad company as is claimed by this corporation, without any authority from its officers.

The relator now moves for an order that a peremptory mandamus issue against the company, commanding them to rebuild, maintain and keep in repair the bridge in question.

A. J. PARKER *and* FRANCIS RISING, *for relator.* ·

W. A. BEACH, *contra.*

MILLER, J. The Albany Northern Railroad Company, was organized under the general railroad act of 1850, (*chap.* 140). Section 24 of the act in question, provides that whenever a track of a railroad shall cross a highway, &c., such high-way, &c., may be carried under or over the track as may be found most expedient. Authority is also conferred by section 28, subdivision 5 of said act " to construct their road across, along or upon" any highway, &c., "which the route of its road shall intersect or touch, but the company shall restore the" highway, &c., "thus intersected or touched to its former state, or to such state as not unnecessarily to have impaired its usefulness. The twenty-fourth section referred to gives authority to cross the highway, either under or over the track, and makes provision for the taking of additional land in cases where a change of the line of the highway is necessary. While this section applies generally to cases where the road crosses a highway, either over or under the highway, it does not in my opinion prevent the application of the fifth subdivision of the 28th section to all such cases, as well as others, which are clearly embraced within the provisions of section 24. Section 28 confers directly upon railroad corporations certain powers with which is the power stated in the fifth subdivision to construct their road across a highway. The language in general makes no exception, and I think applies to any and

NEW YORK PRACTICE REPORTS.          429

People, *ex rel.*, Town of Schaghticoke agt. Troy and Boston Railroad Co.

all cases where a railroad crosses a highway whether it be upon a grade or otherwise.

Assuming that this is a correct interpretation of the enactment cited in this respect and that it is applicable to the case at bar, the question arises as to the construction to be placed upon the language employed prescribing the duty of a railroad company, the obligation of restoring the highway to its former state or to such state as will not unnecessarily have impaired its usefulness.

In the case presented, it would have been difficult if not impossible, to restore the highway exactly to its former condition, but by the building of a bridge it could be used as formerly had been done and its usefulness continued unimpaired, so long as the bridge was kept in repair and maintained. The decay of the bridge or its demolition for any cause would necessarily impair and destroy its usefulness, and further reparation would be indispensible for the accomodation of the public.

The statute evidently intended, I think, something beyond a mere temporary restoration which would endure but for a season. It meant a permanent restoration, which would be continued as long as the highway existed and the corporation was allowed to enjoy the lawful exercise of its franchise.

It does not cancel the duty imposed, or answer the obligation incurred, to restore the bridge for a day, or a month, or a year, but it requires the company to place and to keep the bridge in such a condition as to render it permanently useful. If a mere nominal restoration was intended, then it would be sufficient if it endured for the briefest period of time, and thus the burden of supporting the bridge erected for the use of the company would be imposed upon the taxpayers of the town, who received no benefit and reaped no advantage whatever by its construction.

Clearly, this was not the intention of the legislature, and the language employed was not designed to make a distinction against the public and to impose upon them the

duty and burden of maintaining a bridge, the erection of which was rendered necessary for the accomodation of the company and which would furnish no greater facilities for the travelling community than the highway did as it previously existed. While the railroad act makes stringent provisions for the protection of private property when infringed upon and for the erection and maintenance of fences, cattle guards and farm crossing, it does not follow that the omission to provide for the maintenance of a bridge erected over a crossing relieves them from the responsibility of keeping up the bridge in accordance with the spirit of the statute, and renders them merely responsible for private damages arising from their neglect.

The authorities to which we have been referred on this point merely holds that the statutes protect the company if they comply with the directions imposed (25 *Wend.*, 454; 27 *Barb.*, 520). A compliance is essential, and unless this is done according to a fair interpretation of the language of the statute and looking at the intention of the legislature the company cannot, I think, claim to be exonerated.

The obligation to keep the bridge in repair, is held in several authorities to be implied by the authority given for its erection (*See King* agt. *Inhabitants of Kent*, 13 *East*, 220; *Dygert* agt. *Schenck*, 23 *Wend.*, 446; *The People* agt. *Cooper* 6 *Hill.*, 516; *Follett* agt. *The People*, 2 *Kern.*, 268; *Ros. Cr. Ev. Phil. Ed.*, 1840, 297, 298).

It is a continuing condition co-extensive with the grant itself which applies so long as the company have the right to use and enjoy the franchise and until it is lawfully relieved from the duty imposed by the statute mere abandonment of the track and its disuse is not enough, for this of itself, does not deprive the corporation of a right to assert its former possession and a resumption of a full enjoyment of all the privileges conferred; the right to use is equivalent to the use and enjoyment of the privileges granted, and while it owns the franchise with such a right existing it

cannot relieve itself of the obligation which it imposed, and is bound to perform the condition upon which it was granted. The removal of the track is not in my opinion an act which deprives the coporation of the privileges conferred and the full benefit of its use if it chooses, at any time to enjoy them or discharge it from the duty assumed towards others by the acceptance of the grant upon the terms imposed.

The company cannot incur a forfeiture at its own pleasure and in disregard of the rights of others. (*See The People* agt. *The Albany and Vermont R. R. Co.*, 24 *N. Y.*, 261.

I think that the motion is properly made in the form in which it is now presented, and the right being clear and no other specific legal remedy existing, it is a proper case for a madamus.

Nor is it an objection to granting a writ of mandamus that a party is liable to indictment and may be punished criminally for omitting to do the act to compel the performance of which the writ is sought (10 *Wend.*, 395, 397).

A peremptory mandamus must therefore issue, but as the question involved is important if the respondent desires to appeal, there should be a stay of proceedings for that purpose.