### Case No. 4,666.

FARMERS' LOAN & TRUST CO. v. HENNING et al.

[17 Am. Law Reg. (N. S.) 266.]

Circuit Court, D. Kansas. 1878.

Willard Davis, Atty. Gen., and H. B. Johnson, for the State.

Wallace Pratt and S. O. Thatcher, for respondent.

FOSTER, District Judge. The allegations of the petition standing confessed, and no question being made as to the form of the proceedings, the main question is to determine what obligations and duties the railroad company owes to the state, under its charter and the grants of land by the general government and the state, and the acceptance thereof by said company. And to these questions the arguments of counsel have been addressed, and have taken a wide range. It appears to be well supported by authority and reason that the powers and privileges granted by the charters of this company are permissive only, and not obligatory, and the company could elect whether it would proceed to exercise the franchises thereby granted, or whether it would not. And if it chose the latter course, the only penalty would be a forfeiture of the rights and privileges conferred. York & N. M. R. Co. v. The Queen, 1 El. & Bl. 858; State v. Southern Minnesota R. Co., 18 Minn. 40 [Gil. 21]; High, Extr. Leg. Rem. § 316. It was held by the court of exchequer chamber, in the case first above cited, that the mandamus would not lie to compel the company to exercise its franchises as to a part of the route named in its charter, and abandoned by the company when it had not actually proceeded to build or operate its road over the part abandoned, and no corrupt motives are imputed to the company in abandoning the line. But when the com-

pany has once built and operated its railroad between the points named in its charter, the case seems to stand on different grounds, and it seems the company may be compelled by mandamus to carry out the objects for which it was created, and to exercise its charter obligations. The following cases sustain and carry out this view: State v. Hartford & N. H. R. Co., 29 Conn. 538; King v. Severn & W. R. Co., 2 Barn. & Ald. 644; High, Extr. Leg. Rem. §§ 317, 319, 320; People v. Troy & B. R. Co., 37 How. Pr. 427; People v. Albany & V. R. Co., 24 N. Y. 261, 37 Barb. 216.

The case last cited has been referred to by defendants' counsel as a strong case in defendants' favor, and it is urged that the only remedy of the state is to take proceedings to annul and forfeit the franchises of the company. But upon examination of the case in 24 N. Y., it will be seen that the opposite doctrine is held by a majority of the judges. That proceeding was not by mandamus, but was a proceeding by the attorney-general for an injunction, and for the specific performance of the charter obligations of the company, and the main question to be decided was whether such a proceeding could be sustained. It is true Judge Wright, who delivered the opinion of the court, went farther, and not only argues that the action could not be maintained, but that by no proceeding could the company be compelled to keep up and operate its road, and that the only remedy the people had was indictment or proceedings to forfeit the franchise. But while all the judges concurred in the conclusion, i. e., that the judgment of the supreme court dismissing the bill should be affirmed, four out of the six judges sitting in the case "however were of the opinion that a corporation is under a legal obligation to exercise its franchises, and that it has not the option to discontinue a part of its road and forfeit its franchise. They agree that the remedy is not by action in equity for a specific performance, but by mandamus or indictment, or, at the election of the people, by proceeding to annul the existence of the corporation." So it is apparent this case is in point that the state may proceed, by mandamus, to compel the company to exercise its corporate powers when it has once constructed and operated its road. Having entered upon the exercise of its charter franchises it then owes a duty to the public which it may not, at its caprice, abandon. And in equity and good conscience the obligation is still greater where the company has been the recipient of land grants and subsidies to aid the construction of its road.

Having said this much as to the rights, privileges and duties of the company under its charter, I might rest this case here. But as the legal effect of the land grants made to and accepted by the company has been discussed by the counsel, I will briefly state the view in which that matter presents itself to my mind. Undoubtedly the ultimate object of the congress in granting lands to aid the construction of a railroad from Leavenworth via Lawrence, to the southern line of the state, was to secure the construction and operation of the road from the initial point named in the act of congress. This was a grant in praesenti to the state of Kansas, in trust to aid the construction of two designated lines of railroad, and the lands could not be diverted to any other purpose. It seems to be the settled doctrine of the supreme court of the United States that grants of this nature are not mere naked trusts, but vest a beneficial interest in the state. In the case of the United States against this same company, known as the Osage Land Case, 92 U. S. 748, the court, speaking of this act of congress [12 Stat. 772], uses this language: "The scope and effect of the act of 1863 cannot, in our opinion, be misunderstood. The different parts harmonize with each other and present in a clear light the scheme as an entirety. Kansas needed railroads to develop her resources, and congress was willing to aid her to build them, by a grant of a part of the national domain."
* * *

In the case of Rice v. Minnesota & N. R. Co., 1 Black [66 U. S.] 378, 379, the supreme court had under consideration an act of congress of 1854 [10 Stat. 302], granting lands to the territory of Minnesota to aid in the construction of a railroad, which act contained these words: "No title shall vest in the territory of Minnesota." And the court held in that case, by reason of this provision in the act that no present beneficial interest passed to the territory, and that previous to any rights becoming vested under it, congress could revoke the grant. But it will be seen, at pages 378, 379, and 381, the court draws a distinction between grants like this one and the Minnesota grant, and refer to their decision in the case of Lessieur v. Price, 12 How. [53 U. S.] 76, and Justice Nelson, in his dissenting opinion, at page 382, again reiterates the same doctrine and says: "The grantee in all such cases takes a beneficial interest in the grant, as the representative of the persons for whose benefit it is made." The state of Kansas was interested in building railroads within her limits, and thus developing her resources and inducing immigration to the state, and surely had a particular interest in securing the purpose for which this grant was made. This grant was not made to the Leavenworth, Lawrence and Fort Gibson Railroad Company, or to any other company. The power was clearly vested in the state to select the company to build the road, and generally to direct and control the grant for the purposes named in the act of congress. And it is fair to assume that the state, as trustee, having an interest in the grant, could impose such proper terms and conditions, in executing the trust, as were not in conflict with the provisions of

the act, and were best calculated to secure the object contemplated; and the company having given its consent to such terms and conditions, and received the lands, was bound to comply with its agreement.

In section 2 of the act of the legislature, accepting the grant and transferring it to the railroad company, are these words: "In consideration that the Leavenworth, Lawrence and Fort Gibson Railroad and Telegraph Company shall construct a railroad and telegraph from the city of Leavenworth, by way of the town of Lawrence * * *, to the southern line of the state, in the direction of Galveston bay * * *, the state of Kansas hereby agrees to grant, bargain and sell to said company all that portion of lands granted to the state by the above-named act of congress, applicable to the construction of the above-described railroad." Said act further provided that the company should, within six months, file its acceptance of the provisions of this act with the secretary of state, and, in default thereof, all grants and provisions therein contained as to this company shall cease and be void. To this act the company filed the following acceptance of March 12th, 1864: "Resolved, by the president and board of directors of the Leavenworth, Lawrence and Fort Gibson Railroad Company, that said company hereby accept said grant of lands according to the stipulations of said act of the legislature of the state of Kansas and of the congress of the United States. Resolved, that the secretary be and he is hereby instructed to transmit to the office of the secretary of state of Kansas a copy of the above acceptance of said grant of land." It seems apparent to my mind that the first stipulation of the act was that the company should build its road from the city of Leavenworth, and that its acceptance, by the company, created an obligation on the part of the company by which it was bound to build its road from that point; and even if the state imposed a condition not contained in the grant, as it was acceded to by this company, it cannot now object, and it is bound by its agreement. Baker v. Gee, 1 Wall. [68 U. S.] 333. I am therefore of the opinion that the state has the right to require the said railroad company to exercise the franchises of its charter over the abandoned portion of its line, because: 1. Having constructed and maintained and operated its road over said line, under the powers and privileges of its charter, it cannot thereafter at its option, abandon the same. 2. The stipulation in the second section of the said act of the legislature, and the acceptance of said act by the company, created a contract, obligatory on the company, to build its railroad from the city of Leavenworth. The demurrer must be overruled.