Alexander vs. The City of Milwaukee.

---

ALEXANDER vs. THE CITY OF MILWAUKEE.

The city charter of Milwaukee and the acts amendatory thereof, are public acts of which courts will take judicial notice without their being pleaded.

A municipal corporation making an improvment solely for the benefit of the public, under ample authority authority granted by the legislature, and performing the work in a circumspect and careful manner, is not answerable for consequen-

tial damages produced thereby to property in the vicinity of such improvement, no part of which is taken or used therefor.

A private corporation making an improvement, or carrying on a work primarily for its benefit and advantage, would be liable for such damages resulting from its acts, as are not too speculative or remote to be recovered in an action against a natural person.

The making of a public improvement in the vicinity of private property, which is incidentally injured thereby, or diminished in volume, but no part of which is taken or used for such improvement, is not a taking of private property for public use, within the meaning of the constitution.

APPEAL from the Circuit Court for *Milwaukee* County.

The complaint alleged in substance that the plaintiff was, and for a long time had been the owner in fee simple of lot 180, situate and bordering upon a channel, forming a part of Milwaukee river and Harbor street, near the shore of Lake Michigan, and also of lots 191 and 192, situated upon an island in said river, bordering upon said channel, west of and opposite to said lot 180, with the right to use and occupy said channel; that said lots were of the value of twenty thousand dollars, and in addition thereto, the plaintiff had expended the sum of $1,500, in piling and docking lot 192, and the sum of $750 in dredging out the channel between lot 180 and lots 191 and 192, so as to afford a good and safe way for the larger class of lake vessels to float and lie therein; and that he had been for a long time, and still was engaged in the business of building and repairing schooners, brigs, and other water craft, and had been to an expense of $1,500 in preparing and adapting said lots to his business and establishing his ship yard trade upon the same, by building thereon a blacksmith shop, tool shop, joiner shop, oakum house, shed, and business offices, and by constructing along and upon said channel, between lot 180, and said lots 191 and 192, certain sectional docks, of the cost and value of $8,000, and that he had invested the sum of $3,000 in materials, tools and implements, with which to carry on his said business; that during the year 1853 and until in 1857, and while the plaintiff was carrying on his said business, the defendant purposely cut and removed a large quantity of

earth and solid matter, forming the natural shore of the waters of Lake Michigan and the Milwaukee river, lying between the river and the lake, and did excavate and construct a canal, 260 feet in width and 14 feet deep, extending from the navigable channel of the river, in the near vicinity of said plaintiff's ship yard, to the deep and navigable waters of the lake, which was completed and thrown open and has so remained ever since the fall of 1857, and is known as the "Straight cut Harbor Improvement;" that before the opening of said canal the plaintiff's said lots were of sufficient height of land above the waters of the river, to afford sufficient protection and security against the action and intrusion thereof, as well as against the waves and waters of the lake, so that the plaintiff was enabled to carry on his business without any disturbance or damage therefrom; that ever since the opening of said canal or straight cut, whenever there has been or is a high wind blowing from the eastward, the waves and waters of said lake dash in upon and along said channel, and are driven in upon and along said river, and in upon and over the plaintiff's said lots with great body, force and effect, by means whereof the said joiners shop together with a large amount of ship timber, stores and materials of the plaintiff, of great value, have been swept away, destroyed and lost, and said other buildings erected upon said lots have been driven from their foundation, broken, damaged and rendered insecure and unfit for use, and already said lot 192 has been and is greatly cut up and injured, and said lots 180 and 191 have been demolished and washed away so that they are no longer visible above the surface of the waters of the river, and now form a part of the bed thereof, and said river channel has been filled up with earth and gravel and rendered useless for the purposes aforesaid, and said lots are destroyed and rendered untenable and unfit for any practical use, by means whereof the plaintiff has been broken up in his business and forced to abandon said lots and improvements, and damaged in the sum of $25,000. The defendant

having answered the complaint, at the trial objected to any testimony being given by the plaintiff, on the ground that the complaint did not state facts sufficient to constitute a cause of action, and moved the court to dismiss it. The court sustained the objection and dismissed the complaint, and judgment was rendered accordingly, from which the plaintiff appealed.

*J. B. D. Cogswell,* for the appellant.

1. A municipal corporation is liable, like an individual, for injuries resulting to the property of the citizen from the acts of such corporation, although acting within the scope of its corporate authority, without negligence or malice. *Rhodes vs. City of Cleveland,* 10 Ohio, 159; *McCombs vs Town Council, &c.,* 15 Ohio, 475; 18 Ohio, 229; *Stetson vs. Faxon,* 19 Pick., 147; *Thayer vs. Boston,* id., 511; *Gardner vs. Newburgh,* 2 Johns. Ch., 162; *Goodall vs. the City of Milwaukee,* 5 Wis., 39; 2 Kent Com., 330, note C; *Baron vs. Baltimore,* 2 Am. Jur., 203. In this case, the work constructed was novel, unusual and unanticipated. It is not true that a man may do what he will upon his own soil, as see *Hay vs. Cohoes Company,* 2 Comst., 161, that a corporation cannot dig a canal to the injury of the premises of another, though in a careful manner. *Jermain vs. Cohoes Company,* 2 Comst., 163. He may not build a dam and cause the water to set back upon his neighbor's land, nor direct a water course from his meadows, nor throw water from his house upon his neighbor's land, nor undermine his neighbor's land so as to cause the soil to fall into the pit. *Thurston vs. Hancock,* 12 Mass., 220; 2 Kent Com., 330, note C; 4 Comst., 201. 2. It must be conceded that the plaintiff cannot recover if he suffers no more than the community generally, or in common with a distinct class; his damage must be something special and peculiar to himself. *Lansing vs. Smith,* 8 Cow., 146; *Stetson vs. Faxon,* 19 Pick., 161. But very slight special damage has been deemed sufficient for this purpose. Co. Lit, 56, a; *Maynell vs. Saltmarsh,* 1 Keb., 847; *Hart vs. Basset,* T. Jones, 156; *Chichester vs. Lethbridge,* 7 Wils., 71; *Morley vs.*

*Pragwell*, Croke Car., 510; *Iveson vs. Moore*, Ld. Raym., 486; *Rose vs. Miles*, 4 M. & Selw., 101; *Greasly vs. Codling*, 2 Bing., 263; *Hughes vs. Heiser*, 1 Binn., 463; *Pierce vs. Dart*, 7 Cow., 609. In .this case it is evident that the injury sustained must have been personal and peculiar to the plaintiff.

*J. La Due*, for respondent, cited Private Laws 1853, 158; Private Laws 1857, 102; *Radcliff vs. The Mayor &c.*, 4 Comst., 175; 4 Term, 784; 2 Barn. & C., 703; 2 Hill, 466; *Wilson vs. The Mayor*, 5 Denio., 545; 6 Taunt., 29; 2 Bing., 156; 3 Barb., 459; *Green vs. Borough of Reading*, 9 Watts, 382; 8 Watts & Serg., 85; 6 Wheat., 593; *Matter of Furman St.*, 17 Wend., 667, and several other cases.

*By the Court*, COLE, J. According to the settled doctrine of this court, we must certainly take judicial notice of the provisions of the charter of the city of Milwaukee, and the various amendments thereto. They are public acts which need not be pleaded to bring them to the attention of the court. This point being assumed as settled, the case then presented by the complaint would appear to be this:

The appellant is seeking to recover damages, alleged to have been sustained by him in consequence of the city making the harbor improvement, known as the "straight cut," a work which the city was specially authorized by the legislature to make. There is no allegation that these damages resulted from any unlawful or improper act on the part of the city authorities in making the improvement. But it appears that the appellant owns a lot bordering or situated upon the Milwaukee river, near the shore of lake Michigan, and also two lots situated on an island in that river, upon which he has a dock, ship-yard and other valuable improvements, and it is alleged that the waves and waters of the lake are driven by the wind through a canal or channel, made by the city, into the river and upon his lots, so as to wash them away or to render them insecure, dangerous and unfit for use.

The complaint states the acts of the city authorities in making this artificial channnel as follows :

" While the plaintiff was successfully and profitably carrying on his said business of ship building at and upon the lots and within the channel aforesaid, the said defendant purposely and designedly, by its authoritative and official acts thereunto tending, relating and commanding, cut, removed, and carried away a large quantity of earth and solid matter, forming and composing the natural shore and bounds of the waters of lake Michigan and the Milwaukee river, and lying between said river and said lake, at and bordering upon a point in said city of Milwaukee, known and designated by and upon the surveyors plans thereof, as Center street, and did then and there excavate, dredge, cut and construct a canal 260 feet in width, and from 12 to 14 feet deep, extending from the navigable channel of said river to the deep and navigable waters of said lake, in the near vicinity of the plaintiff's said lots and business, and the same was in the summer or fall of the year 1857 so far constructed and completed as to be thrown open and permit the said waters to mingle together, and the same has ever since remained open and unobstructed, and is known and designated as the " straight cut harbor improvement." It is then averred that whenever there is a high wind from the eastward, the waters of the lake are driven in and through this canal into the river and against the appellants property, producing the injuries complained of.

Thus, it will be seen, the case presents the simple question whether the appellant can recover for such consequential damages thus resulting to his property from the city making the harbor improvement, a work it was specially authorized to do, and done without any negligence, and in a proper manner. It appears to us, that the weight of authority is decidedly against the position that the action is maintainable.

It can be hardly claimed under the facts of the complaint that there was a taking, by the city, of the appellants property

for public use, within the constitutional meaning of that language. If there were such a taking of property, then it is very obvious that the city must make just compensation for the property appropriated. In saying this, we would not wish to be understood as asserting the doctrine, that there must be an actual taking or appropriation of the property itself, in order to entitle the owner to compensation for damage done him. The city might so build a bridge, or open a street, or excavate a canal along or upon a lot, only appropriating a small portion of it, or perhaps none of the land itself, and yet entirely destroy the value of the property for all purposes. In such a case it would seem very hard, that the owner can only recover compensation for the property actually taken without reference to the injury done the remainder. But we do not think the case presented by the complaint comes within this category. The city did not take the property, but made a great public improvement in the vicinity, which incidentally produced the injury complained of. The damage resulted as a consequence of the city making the canal. That is to say, if the barrier between the lake and river had been left undisturbed, no canal excavated, there would have been no way for the waves and winds to operate as they did to the injury of the appellant. This is all the city did do towards producing the injury. Some of the cases deny all legal remedy for such damages, on the ground that they are remote and consequential. Say the court in *Lansing vs. Smith*, 8 Cowen, 146, 49, "every great public improvement must, almost of necessity, more or less affect individual convenience and property; and when the injury sustained is remote and consequential, it is *damnum absque injuria*, and is to be borne as a part of the price to be paid for the advantages of the social condition. This is founded upon the principle that the general good is to prevail over partial individual convenience." And the case is said to be strictly analogous to the injuries or inconveniences resulting from the opening of new streets, building new bridges,

erecting wharfs, or constructing any work of that character, which always·affect, more or less injuriously, the contiguous property, or at all events, affect the interests of those already established in business and dependant upon the regular course of trade, travel and commerce.  We are not, however, pre·pared to say, that the injuries complained of in this case come ·within the rule of being remote and speculative, and therefore not recoverable upon that ground.  They might, perhaps, con·stitute a good cause of action if they resulted from the acts of a natural person.  But they result from a municipal corpora·tion, making a great public improvement, exclusively for the benefit of the public, in the precise way authorized by the legislature, and in a careful, discreet manner.  And for dama·ages thus sustained, however equitable upon principles of justice it may be, that the party should be compensated by the state or the public, yet the current of authority is, that the city is not liable.  And it is quite obvious, that if the appellant may maintain this action for them, so might every proprietor of lots lying along the river whose property had been at all affected by the work, just to the extent of his injury.  This may not afford a conclusive reason why a municipal corporation should not be answerable for all such consequential damages, but it at least, will convince any one, that if such corporations were answerable, few improvements of this nature would ever be undertaken by them.

There is a class of cases which take a distinction between the liability of a municipal corporation which is created for governmental and police purposes, and a private corporation or individual and hold that a different rule applies.  In the for·mer, case as the damage resulted from a work executed by a public corporation for the public good the rule is more re·stricted, than when arising from acts done by a corporation or an individual primarily for private benefit and advantage.  If the principle be settled by the authorities, as it appears to me it is, that a municipal corporation is not answerable for con-

Alexander vs. The City of Milwaukee.

sequential damages resulting from such improvements, there can be no reason why the common law liability should not be enforced in all its vigor against a private corporate corporation or natural person.   A highly interesting and valuable discussion on this point will be found in *Tinsman vs. The Belvidere & Delaware R. R. Co.*, 2 Dutcher 148, where the distinction above alluded to, is asserted and maintained.   That was an action against a railroad company to recover damages for injuries done to real estate by the construction of said road. The damages were consequential, caused by obstructing the waters in a navigable stream at the mouth of a creek upon which the plaintiff had a mill for sawing logs.   He claimed the right of floating lumber in the creek's mouth and of securing and storing it there for the use of his mill, which was located near to and above the railroad track.   The company alleged that it had built its road in pursuance of an act of the legislature, in the most prudent and skillful manner, doing no unnecessary damage and without any design to injure the plaintiff, but the court held that this constituted no defence to the action.   And while assuming the doctrine to be perfectly well settled that an action would not lie for injuries resulting to individuals from acts done by persons in the execution of a public trust and for the public benefit, acting with due skill and caution within the scope of their authority, it was held that the principle was not applicable to private corporations constructing works of improvement for private emolument; see also *The Evansville and Crawfordsville R. R. Co., vs. Dick*, 9 Ind., 433; 27 Barb., 512; 25 Vermont, 49; 14 Conn., 146; 15 id., 312.    But even upon this point the authorities are not in harmony, some cases extending the exemption from liability for consequential damages to private corporations acting under the authority of the legislature. *New York & Erie R. R. Co., vs. Young*, 33 Pa., 175; 9 Conn., 436.

The appellant claims that he is entitled to the protection which the natural barrier between the lake and river affords.

Whether an individual owning the property between the lake and river, would have the right to make a new channel for the waters through it for his own convenience, without providing any protection for the adjacent property, is quite a different question from the one before us. We have merely to decide whether a municipal corporation making an improvement sole-ly for the benefit of the public, under ample authority granted by the legislature and performing the work in a circumspect and careful manner, is answerable for all consequential damages which may result therefrom. Upon the authorities we are constrained to hold that it is not.

There are undoubtedly cases which go far to sustain this action. In Ohio the broad doctrine is laid down that a muni-cipal corporation is liable for injuries resulting to the property of others for the acts of such corporation, though acting with-in the scope of its corporate authority without any circum-stance of negligence or malice. *Rhodes vs. City of Cleveland,* 10 Ohio 159; *McCombs vs. The Town Council of Akron,* 15 id., 474; same case in 18 Ohio 229.

In these cases a municipal corporation is placed upon the same grounds as an individual and held liable for any conse-quential damages, whether its agents act with due skill and caution in the exercise of corporate authority or not. But in *Crawford vs. The Village of Delaware,* 7 Ohio St., 459, the same court admits that the doctrine of those decisions, stands in direct conflict with the great current of authority in Eng-land and America. And an examination of the authorities cited on the brief of the counsel in this case, as well as others which we have met in our investigations, fully show that this admission was not hastily or inconsiderately made.

The doctrine of the Ohio decisions appears to be fully sup-ported by that of *Baron vs. The Mayor and City Council, of Baltimore;* referred to by Justice PUTNAM in *Stetson vs. Faxon,* 19 Pick. 147, 158. They are likewise cited with decided ap-proval by Justice SMITH in his opinion in *Goodall vs. The City*

*of Milwaukee*, 5 Wis., 32, though the liability of the city in this case was placed upon an entirely different ground. As an original question there is much justice and equity in the principle of the Ohio cases. But the law seems to be too well settled the other way to permit us to follow them. We are therefore of the opinion, that the circuit court properly decided that the complaint in this case did not state facts sufficient to constitute a cause of action.

The judgment is affirmed.

PAINE, J. I concur in the decision of the court, that by the weight of authority, a municipal corporation, or public agent, acting in pursuance of law, and with due care and skill, is not responsible for consequential injuries to property which has not been actually taken for public use, occasioned by the construction of a public improvment. Though such consequential injury would, if caused by an individual, or purely private corporation, constitute a good cause of action. I place my assent upon the ground that the law seems to be so settled by a decided current of authority. And I make this statement for the reason, that in the case of *Weeks vs. The City of Milwaukee*, 10 Wis., 242, I approved the reasoning of Justice SMITH in *Goodall vs. The City of Milwaukee*, 5 Wis., 39, which would sustain the opposite conclusion. I should now, if I felt at liberty to regard the question as a new one, hold that either a city or the state was liable for such damages. And by this I mean such damages as would be recoverable, if the injury was caused by a private person, by reason of their remoteness. The distinction between the two kinds of damages is well settled in the law. And with respect to the recovery of remote damages, municipal municipal corporations stand upon the same footing with all other defendants. They are not recoverable, not because the defendant is a municipal corporation, acting under authority of law, but because the damages

are so remote that they do not in law constitute a ground of action.

But I have been unable to see the applicability of much that has been said in some of the cases about remote damages, where the injury shown, though consequential, was clearly not remote, but would have afforded a good cause of action if done by a private person. Such I regard the character of the injury alleged here. It seems to me, that if a man should build a dam upon his own land and cause the water to overflow the lands of his neighbor above, it might as well be said that the damages were remote, as to say so here.

The exemption therefore, can rest only upon the fact, that the injury is caused by a public agent acting under the authority of law with due care, the authorities having settled that there can be no recovery in such cases. I concede that the infliction of such damages, where no portion of the property of the plaintiff is actually taken or occupied for public uses, does not come within the letter of the constitutional provision, prohibiting the taking of private property for public use without compensation. Yet as a matter of justice, the right of the owner to such damage, is as clear as his right to compensation, where his property is actually taken. And to deny it, though not a violation of the letter, yet is entirely out of harmony with the spirit of that constitutional provision.

It is clear that the agents who execute such a public authority with proper care, ought not to be personally liable. And this was really the question presented in some of the earliest cases out of which the doctrine of exemption from liability arose. And it seems to have grown up insensibly from the position that the agents should not be personally liable, which was founded upon good reasons, to the doctrine that there is no liability anywhere, which I think never ought to have been established. But as already said, believing the law to be so settled, I have concurred in the decision upon that ground.