Borchardt vs. The Wausau Boom Co.

## BORCHARDT vs. THE WAUSAU BOOM COMPANY.

*December 15, 1881—January 10, 1882.*

FLOWAGE OF LAND. *(1) When not a cause of action. (2) What questions for the jury.*
REVERSAL OF JUDGMENT: *(3) For refusal to instruct.*

1. A company which has constructed works (in this case a boom) in a public river in a proper manner and by authority of the legislature, is not liable for damages for flowage of land caused by an extraordinary freshet such as the company could not reasonably have anticipated and provided against, even though such damages may have been to some extent occasioned by the presence of such works in the river.
2. The question whether in a given case the freshet causing the danger was of such unusual and extraordinary character as to excuse a party from foreseeing and providing against it, is for the jury under proper instructions.
3. Where an instruction asked, which, though not in the best form, defines the law with substantial correctness, is rejected, and no correct instruction upon the same point is given, this is error, if prejudicial to the appellant.

APPEAL from the Circuit Court for *Outagamie* County.

Action for injury to plaintiff's land from flowage. Plaintiff had a verdict; a new trial was refused; and defendant appealed from a judgment pursuant to the verdict.

The principal question involved will sufficiently appear from the opinion.

For the appellant there was a brief by *Silverthorn & Hurley*, and oral argument by *Mr. Hurley*.

For the respondent there was a brief signed by *M. M. Charles*, his attorney, with *Finch & Barber*, of counsel, and a supplemental brief by *Finch & Barber*, and oral argument by *Mr. Charles* and *Mr. Barber*.

ORTON, J. This action is brought to recover damages to the premises of the plaintiff, situated above the works of the boom company on the Wisconsin river, by flowage caused by such works. The company was authorized to construct and maintain such works at that place, and in such manner, by a charter granted by the legislature of this state by chapter 45, P. & L. Laws of 1871. There was evidence tending to show that in ordinary seasons of high water said premises were not at all flowed, and that the great freshets, which, together with the works of the company, caused the flowage complained of, were uncommon, unusual and extraordinary, and could not have been reasonably contemplated, anticipated or expected at the time such works were constructed.

In *Cohn v. Wausau Boom Co.*, 47 Wis., 314, it was held that, under the amendment of its charter by chapter 256, Laws of 1873, this company was a *quasi* public corporation, and an agent of the state for the improvement of the Wisconsin river. The seventh instruction asked by the appellant was as follows: "I charge you that, if the evidence convinces you that the damages claimed were only incidental to an additional rise of water during extraordinary freshets, although such additional rise of water was caused by the temporary stoppage

of logs at defendant's works, the plaintiff cannot recover in this action." We think the refusal of the court to give this instruction was error. It was contended by the learned counsel of the respondent, that this instruction was in effect given in the general charge; but we are unable to find any part of the general charge containing this principle, viz.: that for damages occasioned solely by, and which were only incidental to, an additional rise of water in the river during extraordinary freshets, the company is not liable, notwithstanding they might have been to some extent occasioned by its works being in the river. These works were lawfully and rightfully in the stream, and the company should be held responsible only for all direct and proximate consequences, and perhaps for such consequences indirect and remote or incidental as might have been reasonably expected to follow from their construction and maintenance. This we understand to be the extent of the rule; and injuries incidental only to natural occurrences which are so extraordinary, unusual and uncommon that they could not have been reasonably contemplated, anticipated or expected, are *damnum absque injuria*. In application to this case, the doctrine may be stated, that this company would be liable for all damages by flowage back of the waters of the river occasioned by their works, in all such conditions of the river as might have been reasonably anticipated or expected. Such conditions would be not only the natural rise and fall of the waters during the year, but also the floods and freshets which occur annually, or at longer periods or intervals, if regularly, and which from having been known to occur at such periods or intervals might be reasonably expected to occur again. But, on the other hand, if no damages whatever result from these works during the ordinary and usual fluctuations of the river, and the damages complained of resulted from a flood which to the same extent had never occurred but once before, so far as known, and that very long ago, and which might not reasonably have been expected to occur again,

and which was so unusual or phenomenal as to excite wonder or surprise, then they cannot be recovered. It is, of course, very difficult to lay down any certain rule by which such occurrences are to be deemed to be so extraordinary and unusual as to exempt the company from liability for their consequences in connection with their works; and such matter may properly be left to the judgment of the jury, under an instruction by the court in which this principle of the law is clearly stated. This principle is of the utmost importance to the existence and purposes of corporations which are created to build and maintain works of internal improvement, in part for the public benefit, by the investment of private capital. All of the ordinary and natural consequences of their works may well have been contemplated and expected, and their ability to meet such consequences and compensate for such damages as would be likely to occur may be ample and constantly maintained; but one extraordinary and unforeseen event, happening from natural causes, against which no provisions or precautions are or could be made, may sweep away in a day or an hour not only all of their profits but their capital, and bankrupt and destroy the corporation itself. It view of such extraordinary risks and hazards, capital would not be likely to seek such an investment, and such enterprises, of great public importance and benefit, would be avoided. But, without further illustration or vindication of the principle, we think there was evidence in this case from which the jury might have found such facts as would have warranted its application, and as required its statement as a matter of law in the instruction asked. This doctrine has been recognized and approved and clearly stated by this court, as well as by other courts, and is made to rest upon the common and familiar rule of damages, that only such can be recovered as do naturally and would ordinarily follow from and are proximate to the cause, or such as might have been contemplated, anticipated or expected to result from such a cause.

In *Alexander v. City of Milwaukee*, 16 Wis., 247, this principle was not involved, and the city was held exempt from liability for the flooding of the plaintiff's land by the waves of the lake being driven by winds from the east, but which would not have submerged it if the works had not been constructed, on the ground that the works were built in a lawful and discreet manner by the city, wholly for the public benefit, and in the precise way authorized by the legislature. It may not be necessary to decide the question, but we are inclined to think that a corporation such as this is defined to be in *Cohn v. Wausau Boom Co.*, *supra*, as *quasi* public, and the agent of the state in constructing its works, does not stand upon the same footing with municipal corporations making improvements for the public benefit, as in the above case. The principle here involved is found in the maxim, *causa propinqua non remota spectatur*, and in application to this case it is well stated in the text of Angell, W. C., § 349: "If in the case of the obstruction of a public river it appears that injury resulting therefrom arose from causes which might have been foreseen, such as ordinary periodical freshets, or the collection of ice, he whose superstructure is the immediate cause of the mischief is liable for the damages. On the other hand, if the injury is occasioned by an act of Providence, which could not have been anticipated, no person can be liable." This is the head-note to the case of *Bell v. McClintock*, 9 Watts, 119, closely analogous to this case in the injury of the lands of the plaintiff by flowage caused by the works of the defendant across the river below. The injuries complained of were of two descriptions: those which arose from the ordinary freshets which were of common and periodical occurrence, and those which arose from the extraordinary floods of two certain years. The court below ruled that the defendant was liable for all damages from the ordinary, common and expected floods of the season, but not for those occasioned by the uncommon, unexpected and extraordinary

floods. These rulings are approved; and, after stating the true rule of liability for the ordinary freshets or floods which might have been expected with considerable certainty at fixed times and seasons, it is said in the opinion: "But when the injury arises from some cause out of the ordinary course, from some unusual cause — as, for instance, from a flood or freshet such as has been described by the witnesses,— the owner of the dam is not liable. It is *damnum absque injuria*. They are not such accidents as ordinary foresight or prudence could guard against."

In *Sabine v. Johnson*, 35 Wis., 185, "the [circuit] court was asked to instruct the jury that, in determining the plaintiff's right to recover, they were to consider the increased flowage of his land at an ordinary stage of water only, and not the effects of freshets." The court refused so to instruct, and this court affirmed such ruling on the ground that the instruction "does not limit the exemption from liability to the effects of those *unusual and extraordinary freshets* which human sagacity cannot foresee, nor experience foretell;" and cited approvingly the above text from Angell on W. C.

In *Allen v. City of Chippewa Falls*, 52 Wis., 430, the liability of the city is rested on its negligence in not providing means for carrying off the water in times of heavy rains in connection with its other works, and not on the ground of exemption of municipal corporations from liability for injuries to property not taken or directly affected by works of improvement, as in *Alexander v. Milwaukee, supra;* and this court, in the opinion of the present chief justice, says: "The duty of providing against an extraordinary rainfall or unusual freshet, such as does not occur but once in a series of years, which persons of ordinary prudence would not think of guarding against, is a burden which ought not to be imposed upon the city."

In *Smith v. Agawam Canal Co.*, 2 Allen, 355, it was admitted that when the water was unaffected by ice and freshets

it did not in any manner affect the plaintiff's mills above, and that on such occasions the water and ice set back upon the plaintiff's premises; and the court says: "From these facts it is a necessary consequence that, if the plaintiff sustained any damage by the rise of water, it must have been owing to the occurrence of freshets and extraordinary floods." For the results of such causes the defendants were held not responsible. The principle seems to be properly expressed, that for damages arising from "forces casual and extraordinary" the parties constructing such works in or across rivers are not responsible. To the same effect are *Inhabitants of China v. Southwick*, 12 Maine, 238; *Monongahela Navigation Co. v. Coon*, 6 Barr, 379; and *Mayor, etc., of N. Y. v. Bailey*, 2 Denio, 433.

In *Gray v. Harris*, 107 Mass., 492, the evidence was that such a flood had occurred once or twice before, but at long intervals, and the court below directed a verdict for the defendant on the ground that such a flood could not have been reasonably anticipated as a matter of law. This ruling was reversed because the question was one of fact upon the evidence, and should have been submitted to the jury, and it is said in the opinion: "It is impossible for us to say judicially, upon this evidence, that this was so great a freshet that the defendant was not bound to anticipate and provide against it."

This principle is distinct from that which exempts municipal corporations from liability for injuries to lands not taken or directly affected by works of improvement constructed solely for the public benefit according to law, and from that which is expressed in *Panton v. Holland*, 17 Johns., 92, "that a possible damage to another in the cautious and prudent exercise of a lawful right is not to be regarded, and if a loss is the consequence it is *damnum absque injuria.*"

It is therefore only intended to be decided in this case that, as there was evidence tending to show that the flood and freshet which caused the damages complained of was so unusual and extraordinary that the plaintiffs could not have anticipated or

expected it, such fact should have been submitted to the jury under an instruction clearly presenting this principle. The instruction asked is not very clearly expressed to present it, but its meaning is sufficiently apparent, and we think the circuit court ought to have given this instruction as asked, or one more clearly expressing the principle intended.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded for a new trial therein.