*ROBERT WELTY v. JOHN M. VULGAMORE.

1. EXTRAORDINARY AND UNUSUAL FLOODS—EMBANKMENT.

A riparian owner who constructs an embankment upon his own lands to protect them from the action of the waters of a stream, is not liable for injuries to lands of a neighboring owner caused thereby, where such injuries are suffered during certain extraordinary ·and unusual floods which could not, at the time of the construction of such embankment, have been anticipated by a man of ordinary prudence and intelligence.

2. ESTOPPEL. .

To constitute an estoppel the person sought to be estopped must have done some act or made some admission, inconsistent with his claim, with the intention of influencing the conduct of another, and such act or admission must actually have had that effect.

HEARD ON APPEAL.

J. A. Eylar and S. L. Patterson, for defendant in error, cited:

Crawford v. Rambo, 44 Ohio St. 279, 284 [7 N. E. Rep. 429] ; Angell Water Courses, Secs. 333, 334; Illinois Central Ry. Co. v. Bethel, Ill. App. 1; Bell v. McClintock, 9 Watts 119 [34 Am. Dec. 507] ; Pittsburg, Ft. W. & C. Ry. Co. v. Gilleland, 56 Pa. St. 445 [94 Am. Dec. 98] ; Baltimore & O. Ry. Co. v. School District, 96 Pa. St. 65 [42 Am. Rep. 529] ; Kansas· City, M. & B. Ry. Co. v. Smith, 17 So. Rep. 78 [72 Miss. 677 ; 27 L. R. A. 762 ; 48 Am. St. Rep. 579] ; Village v. Kallagher, 52 Ohio St. 183 [39 N. E. Rep. 144] ; Pittsburgh, Ft. W. & C. Ry. Co. v. Brigham, 29 Ohio St. 374; Ohio & M. Ry. Co. v. Ramey, 28 N. E. Rep. 1087 [139 Ill. 9] ; Frazier v. Brown, 12 Ohio St. 294, 312 ; Letts v. Kessler, 54 Ohio St. 73 [42 N. E. Rep. 765].

RUSSELL, J. (Orally.)

The case of Robert Welty v. John M. Vulgamore, is a petition coming into this court by appeal from the court below. The case is brought here upon an amended petition filed by the plaintiff, and it alleges that the plaintiff was, at the time hereinafter mentioned, which was in 1890, and still is, the owner in fee simple of eighty-five acres of land situate in this county, on the easterly side of the Scioto, and I might say, also alleges that it is situated on the exterior bend of the river. The plaintiff also alleges that the defendant (Vulgamore) is the owner of one hundred and forty-five acres of land situate on the westerly side of the Scioto river, and on the interior bend thereof. The plaintiff further alleges that in 1884, and before the plaintiff became the owner of the

*Affirmed by Supreme Court, without report, December 9, 1902, 67 O. S. 529.

said land, there occurred in said river a great, unusual and unprecedented flood, whereby the lands of defendant were deluged and flooded; that the defendant witnessed the same and thereupon determined to construct an embankment of sufficient height and extent to withstand the pressure and turn the waters of the most unusual and extraordinary flood that might occur in the river. Then the plaintiff alleges that some time prior to February, 1898, and after the flood of 1884, the defendant constructed, upon his lands above described, within the bend of the river aforesaid, an embankment composed of earth and stone, about one hundred rods in length and of great and unreasonable height, extending from a point near the canal, in an easterly direction across the bottom to the river, near to low water mark in said river, or stream, said embankment being located about the middle of said bend and at right angles to the stream.

The plaintiff says that said levee was of sufficient height, length and extent to turn the overflow in case of the usual and ordinary, and the most unusual and extraordinary freshets, and the said embankment was higher by some feet than the highest flood that ever occurred in said stream, including the flood of 1898; that the effect of the said embankment in times of freshets, alike in usual and extraordinary floods in said river, is to form a dam to the overflow water of the river, and to prevent such overflow from passing into and over the lands aforesaid of the defendant; but such overflow waters are by said embankment diverted from their natural course down the river in a southerly direction and caused to flow easterly across said embankment and otherwise to flow across it and over upon the lands of the said plaintiff, that because of the bend in the river at said point, in times of freshets, the great body and volume of the overflow water would naturally flow over the lands of the defendant on the west side of the river, but by the erection and maintenance of said levee or dam, by the defendant, all of the said overflow is dammed up, forced along said embankment, and flows over the opposite side, upon the plaintiff's lands, thereby relieving defendant's lands and throwing the entire weight and burden of water upon the lands of the plaintiff, causing a more rapid and whirling current around to the east of the said levee and upon the lands of the plaintiff; that because of the increased force of the current of water occasioned by said embankment, the lands of plaintiff are being encroached upon, the river is being rapidly moved to the eastward, thereby diminishing the lands of plaintiff, by the encroachments of the river, and increasing the lands of the defendant by accretion produced by the action of said river; that during the flood of 1898, and at all times of flood of said river, including both ordinary and usual freshets when said stream is out of banks, which is reasonably

expected and does occur during the rainy season of each year (which said floods have occurred one or more times during the erection of said levee) the lands of the said plaintiff were overflowed by the waters of the said river, and because of the embankment, the overflow on the said lands of the plaintiff was increased in violence, and said lands were entirely inundated, and by the rapid and swirling current, said waters washed off and carried away the soil from about thirty-five acres thereof, washed deep holes and gullies in the surface, deposited logs, debris and gravel thereon, and undermined and washed away a large portion of the west side of the plaintiff's lands, thereby rendering said lands wholly unfit for cultivation and destroying the same.

The plaintiff avers that said embankment is unreasonable in height and extends out into the river almost to low water mark, and by reason of the great and unreasonable height of the levee—the great and unreasonable height and length of said levee—plaintiff's lands continue to wash and undermine and be damaged by the ravages of the said stream at times of flood, as aforesaid, and each recurring flood will cause an additional injury to plaintiff's lands, if said embankment is maintained at its present height.

The plaintiff in the case then further avers that said embankment was constructed by defendant at a point in the bend of the river, and at such length and height as would throw all the water off his lands, in times of freshets, onto the lands of the plaintiff; that the same was done in total disregard of plaintiff's rights, etc. Wherefore, the plaintiff says that he has sustained great damage and asks for damages in the sum of $2,000, and asks that the defendant be enjoined from maintaining the embankment.

I have thus restated a large portion of the petition, from the fact that it is stated in an admirable manner; the claim of the plaintiff could not, I think, be stated in more concise and accurate form than is done in the petition.

To that petition the defendant files an answer, which in the first count, is a substantial denial of each of the material allegations in the petition; there are four counts, or rather three counts numbered, and the fourth paragraph, which is equivalent to a fourth defense.

As I said a moment ago, the first count in the answer copies the material allegations of the petition and then denies each; it might as well have been a general denial of all of the allegations, except the building, I take it, of this embankment, because that is the effect of it. In the second defense it sets up the statute of limitations—in the third defense—by way of an excuse for the building and erection of this embankment, it sets up that these lands are agricultural lands and that the

Welty v. Vulgamore.

defendant, for the purpose of protecting himself against the encroachments of the river, was compelled to construct this embankment. The fourth defense is a defense of estoppel. It alleges that at the time when the defendant was about to construct this embankment, that the grantor of the plaintiff, knowing that his land was being washed away, encouraged and induced him to make the embankment, thereby, as it is claimed by the defendant, the grantor of the plaintiff would be estopped, and the plaintiff coming in as grantee under the original grantor, would also be estopped from making any objection to the continuance of this embankment, because he had consented to and had encouraged the building of the same.

Now, so far as the matter of estoppel is concerned—taking it up in the reverse order in which it is presented—I might say, though, that there is a reply denying all the material averments and new matters set up in the answer, and the case comes to issue upon these questions. Taking up, as I said a moment ago, the allegations of the answer in the inverse order in which they are presented, I might say there is no evidence showing that the plaintiff's grantor did anything that caused the defendant to expend any money, or perform any duties in reference to this embankment, that he would not have done, and did not intend to do, without the advice or consent of the grantor of the plaintiff; and I might say that the matter of estoppel is well presented in this case in 1 American & English Decisions in Equity, commencing on page fifty-five. What constitutes it an estoppel? The person sought to be estopped must do some act, or make some admission, with the intention of influencing the conduct of another, or what he has reason to believe, would influence his conduct, and which act or admission is inconsistent with the claim he proceeds now to make. The other party, too, must have acted upon the strength of such admission or conduct.

Now, Mr. Vulgamore here did not claim that he acted—that he expended any money upon the advice, consent and encouragement of the original grantor, and hence this defense must necessarily fail.

Now, going back to the other questions presented, I might say that as to the statute of limitations, the evidence here shows that the material damage to this property, whatever did accrue, accrued in 1898, and that the action here was brought in that year; so that no question, from the evidence here, no question was made for our consideration, upon that question of the damage of 1898—yes, and 1897, also. Now, so far as—coming back now to the main controversy that exists and that was presented to us in this case: It is, whether or not the defendant, at the time he constructed this embankment, constructed the same as a reasonable and ordinary man should with regard to the property of his neighbors,

and so far as the evidence is concerned, before us, there is no substantial conflict as to what he did, when he did it, and as to the results to the land of the plaintiff. ' There was quite a large number of witnesses testified before us, men of standing and character, as it seemed from their evidence, no one desiring, as it seemed, to vary from what was the exact truth; so that it becomes, not a question of a contention, you may say, between the two sides as to the evidence presented, but it is a question on the evidence presented to us, as to what are the legal rights of the parties; because, as I said a moment ago, the facts in the case are so overwhelming, in one way, that they are substantially to be said to be admitted. In other words, the defendant, in his defense, did not introduce any evidence to contradict and vary the statements made by the plaintiff. Then it presents a question, as I said—more of a question of law on the evidence that is substantially admitted, than it is a question of evidence.

Now, the question as it is presented to us—we think we are justified in making the following findings:

(1)    We find from the evidence, that the defendant constructed his embankment substantially as averred in the plaintiff's petition.

We also find from the evidence, that three acres of plaintiff's land were destroyed in 1893; three acres in 1897, and twenty acres in 1898.

The embankment of the defendant caused a great part of the damage to plaintiff's land.

Counsel will understand, and every one who heard the evidence will understand, as well as the court, that we cannot say the whole of the damage was done by reason of this embankment, but the greater part, the greater part of this damage, we think from this evidence, was produced in 1898 and 1897, by reason of this embankment—and also in 1893.

That each and all of the floods that caused the damage to plaintiff's land were extraordinary floods; that no damage occurred to plaintiff's land at any of the ordinary or usual floods, by reason of the construction of the said embankment of the defendant.

That is the only one of the findings, so far, that we have any doubts at all about. There was one or two of the witnesses, Mr. Barnes, for instance, I think, H. C. Barnes, testified in answer to a question by counsel for the plaintiff—he said that the embankment turned the water toward the land of the plaintiff in usual and ordinary floods, as well as the extraordinary floods; but when we look at all the evidence, including the plaintiff's, we find that no witness testified to any damage having occurred at any of the times, other than the floods of 1893, 1897 and 1898. The plaintiff himself expressly states that the first damage that he noticed, on his land, was at the flood of 1893. Then he gives the

amount of the land that he thinks he lost in 1893, and then says that at the recurring flood of 1897, he lost about the same amount; then he says that the disastrous flood of 1898 destroyed about twenty acres of his land. So that, I say, while some of the testimony would seem to indicate that in the ordinary floods, the current of the river was diverted toward the land of the plaintiff, yet, from the evidence, there is nothing to show us, or convince us that any damage occurred because of the construction of this embankment, at any of the usual and ordinary floods.

We further find that at the time defendant built his embankment he could not have reasonably anticipated the said flood that did the damage to plaintiff's land, and the defendant used reasonable and ordinary care in the construction of said embankment.

Now, from the evidence, we think we are fully justified in making these findings, from the fact that there is no evidence before us that prior to 1884, any flood that had ever occurred since any of the inhabitants could recollect, had been so high as the flood of 1884—and there is a singular coincidence that in about nine years after that flood, another flood occurred that came within about six inches of it, and that in 1897 another flood occurred that was near the same in height, and that in 1898, as the principal part of the evidence shows, that the river was six inches higher than was ever known before; so that within fourteen years of each other, four floods had occurred that were higher than, so far as appears from the evidence before us, any flood that had ever occurred in the valley, and we think we are justified in, as I said a moment ago, in finding that these four floods were extraordinary floods; not the usual and annual floods that might be anticipated from year to year, in the spring and fall, but they were extraordinary floods, unusual. The petition avers that the 1884 flood was an extraordinary flood, and that the other, as I said— one of them being considerably higher, the 1898 flood—and the others so near it in height—we think we are justified in saying that they were all four extraordinary floods and could not be anticipated by a reasonable and ordinary man, situated as this man Vulgamore was.

Now, that raises the question of whether or not Vulgamore is liable, on these findings of fact, as produced to us, and as the law governs, in cases of this kind, and we are cited to a large number of authorities, a few of which I propose to refer to briefly.

Counsel have ably presented this case to us, and as I said awhile ago, the facts are substantially admitted; so it becomes a question of law, and we have been greatly aided by the able presentation of the matter by counsel, and we have arrived at a conclusion, which is as satisfactory, probably, as conclusions usually arrived at in cases of this kind,

Now it is insisted, by counsel for the plaintiff, taking the circumstances under which he built this embankment, that Vulgamore is not only liable for the damages that occurred by reason of the ordinary and usual floods, but that he is liable for those that occurred by reason of the extraordinary floods, and that is the question, and we are cited to a case in 139 Illinois, which, at the reading of the case, seemed to us to be a very strong case in favor of the plaintiff, and if the rule there laid down were to govern in cases of this kind, then it should be substantially followed; but I might say that we think that when the case is read carefully, a distinction may be drawn between the facts, as found in that case, and the facts that are found before us in this case. It is a case of the Ohio & M. Ry. Co. v. Ramey, 28 N. E. Rep. 1087, 1088 [139 Ill. 9; 32 Am. St. Rep. 176]. The railway company, in constructing and maintaining embankments, bordering upon a watercourse, is bound not only to anticipate and provide for the flow of the ordinary rise and fall of the waters during the year, but also, for the floods and freshets which occur at long periods, or intervals, and which, from having been known to occur, may reasonably be expected again.

"Although a rainfall may be more than ordinary, yet, if it be such as has occasionally occurred, and it may be, at irregular intervals, it is to be foreseen that it may occur again, and it is the duty of those changing or restraining the flow of water, to provide against the consequences that will result from it.

"In an action against a railway company to recover damages for the obstruction of the flow of water by an embankment, and thereby overflowing upper lands, the question will not be whether the defendant has sufficiently provided for the escape of the water of ordinary floods, but, has it provided for the escape of the waters of such unusual or extraordinary floods as it should have anticipated would occasionally occur in the future, because they had occasionally occurred at intervals, though of irregular duration, in the past."

Now, let us apply the facts of the case to the case as found here, on the evidence in this case.

In that case, the court puts the decision upon the ground that they were not only to provide, in their embankment, against the floods that may usually occur, but such floods as extraordinary floods that occur occasionally, and that have occurred in the past.

Now, how stands the case at bar? In this case Vulgamore had one flood, as appears from the evidence, to guide him; that was the flood of 1884. No evidence showing that this Scioto river had occasionally, at long intervals, even, raised to the height that it did in 1884, therefore,

he had but one of what may be generally known in this Scioto and Ohio valley, as one of the most remarkable floods that has appeared since the white man occupied the country; so that, as I say, he had nothing to indicate to him, excepting the flood of 1884.

Now, what should a reasonable man do, knowing there had been one such flood—when he went to construct, or undertook to construct a levee or embankment? Why, we will all see readily that an ordinary, prudent man would not be required to anticipate the flood of 1884. Why? Because, as I said, from the evidence before us, no such flood had ever appeared before; therefore, he would not be required, as a prudent man, to guard against a flood of that kind in the future.

Now, some other cases were cited to us, a large number, as I said a moment ago, and I only propose to read extracts from a very few of them. Another case cited and relied upon by counsel, is Salisbury v. Herchenroder, 8 Am. Rep. 354 [106 Mass. 458].

"Defendant suspended a sign over a street in Boston, in violation of a public ordinance of the city. During an extraordinary gale, the sign was blown down and a bolt, part of the fastenings, was hurled against plaintiff's window, causing damage, for which an action was brought: *Held,* that defendant was liable, notwithstanding due care was exercised in constructing and fastening the sign."

Now, I might say, without reading the opinion of the court in that case, that that is put upon the ground that the party was violating an ordinance; he was violating a rule or law of the city, and therefore he could not defend himself even against an act of God, because he had not any right, as a man has on his own land, to make an obstruction. In other words, a man building an embankment upon his own land is not violating any law of the land, but he may so injure his neighbor that he may be responsible for damages.

Another case is Gray v. Harris, 9 Am. Rep. 61 [107 Mass. 492]:

"One who builds a dam across a stream is bound so to construct it that it will resist not only ordinary freshets, but also, such extraordinary floods as may be reasonably anticipated."

Now, I do not recollect, in reading that case, whether the ground on which the court put that was, that floods had occurred in the stream at various times before, but if so, that he must use such care in the construction of a dam across the stream, to protect it against extraordinary floods, as a reasonable man would do, under the circumstances.

Now, those are all the authorities I care to refer to, on the part of the plaintiff, in apposition to the seeming authorities of the plaintiff; but, as we think, are not directly antagonistic to the authorities cited by

the defendant in the case, because we think the Illinois case, where the flood occurred before, at previous times—that might be considered an ordinary and usual flood, although the court there calls that extraordinary.

Now, the first case that I desire to read something from, is Kansas City, M. & B. Ry. Co. v. Smith, 17 So. Rep. 78, 81 [72 Miss. 677; 27 L. R. A. 762; 49 Am. St. Rep. 579]. This is a case from Mississippi, and there are many things in it that are similar to the case at bar. I shall read but a small portion of it.

"The rules governing the rights and duties of individuals in reference to waters rest upon principles which underlie very many other property rights. At last they depend upon the two legal maxims that one may make such use as he wills of his own, and that he must so use his own as not to impinge the legal rights of others. As to the surface water of streams flowing along their channels, general rules have been formulated which are usually applicable, and under which the relative rights and duties of parties may be adjusted; but to apply these rules to waters of a radically different class is to measure different conditions by a single standard. To say that flood waters are surface waters and may always be dealt with as such, or that they may be fenced against as may be waters of the sea, regardless of consequences, would be to give to one riparian owner the power and right of benefiting and preserving his own property at the direct expense of another."

This was a case against the Kansas City & Memphis Railroad Company.

"The roadway of the defendant company is not shown to be of sufficient height to obstruct the waters of Town creek, so as to deflect them upon the land of the plaintiff at time of ordinary or periodically recurring floods. The witnesses speak of the floods of 1874, and of those of April and July, 1892, as having been the highest ever known. It is not claimed by the plaintiff that his lands would not have been submerged by the flood of July (for injury by which he sues) if no railroad had been built in the valley. His contention is that the water was somewhat deeper on his land than it would have been, that it remained longer, and flowed with stronger current. But it must be borne in mind that all the evidence relates to an exceptional condition of affairs, to a flood equalled but twice, and exceeded but once in the memory of the inhabitants; and against such contingency, it would, in no event, be negligence not to provide."

In that case, I might say that there had been three floods of extraordinary height, in this Town creek, which was a stream almost as wide as the Scioto river; it was testified to that it was one hundred and twenty feet wide there at this place, at ordinary height, emptying into the Tombigby river, and the court say that, although three of these extraordinary

floods occurred prior to the construction of this road, two of them occurring in one year, that that was not sufficient notice, so that an ordinary man would not have constructed the embankment as the railroad company did.

Now, the next case that I refer to, is Borchardt v. Boom Co., 54 Wis. 107 [41 Am. Rep. 12; 11 N. W. Rep. 440] :

"A corporation authorized by the legislature to construct a pier in a navigable river, is not liable for the flooding of lands by an extraordinary freshet, not reasonable to have been anticipated and guarded against, although, to some extent occasioned by the pier—the pier having been properly constructed." See also Black River Improvement Co. v. Booming & Transp. Co., 11 N. W. Rep. 443 [54 Wis. 659; 41 Am. Rep. 66].

Then the next case to which I refer, is Bell v. McClintock, 34 Am. Dec. 507 [9 Watts 119], a Pennsylvania case. I shall only read the syllabus:

"The owner of a dam on a stream is liable for damages caused thereby to private property on such stream, by the ordinary and expected floods of the season, but not for those occasioned by extraordinary and unexpected floods. This principle applied in the case of a stream made navigable by law."

The authorities cited in Village v. Kallagher, 52 Ohio St. 183, 186 [39 N. E. Rep. 144], have some bearing upon the principle of the question, but it is not a case concerning the damming or turning of water; it is a case that "A municipal corporation is not an insurer against accidents upon its streets and sidewalks: It is held to reasonable care only in the keeping of its streets free from nuisance; impracticable things are not required, nor is a municipality bound to anticipate improbable or unprecedented events, and provide against their possible results. To be bound to provide against unprecedented storms, therefore, is to be required to use extraordinary, or the highest degree of care. Hence, in this case, if the bill board was not in itself, a nuisance, i. e., if it was so placed as not to interfere in any manner with the ordinary use or of travel on the streets or sidewalks near or about it, and was constructed in a good, substantial manner, so that it was safe and free from danger, under all ordinary circumstances, and its fall was caused by an extraordinary or unprecedented wind storm, the village could not be held liable."

Now, I think the principle in this case is decided in the case of Railway Co. v. Carr, 38 Ohio St. 448 [43 Am. Rep. 428], and I shall only read the third paragraph of the syllabus:

"When such a change is made without fault or carelessness, and a levee on the opposite bank is broken and washed away by an unusual,

but not unprecedented flood, whereby the crops growing on adjacent lands are destroyed, it is *damnum sine injuria,* notwithstanding a sand bar in the river at the new mouth of the creek, caused by the change in the creek, may have contributed, in some degree, to the damage."

Now, the case in Ohio that we have felt controlled by, more than any other one, considering it the strongest authority here when the case is fully investigated, is the case of Crawford v. Rambo, 44 Ohio St. 279 [7 N. E. Rep. 429], and I will only read the syllabus of the case; that was a case where the two owners, one of them on the westerly side of the Muskingum river, and the other on the easterly side, had lands that would adjoin, had it not been for the river. The one on the westerly side constructed an embankment, by which it was claimed by the plaintiff, the one on the easterly side, that it threw the water over onto him, and damaged and washed out and destroyed his land, somewhat as in the case at bar.

"The owner of land situate upon a river, or other running stream of water, has the right to construct embankments thereon for the purpose of protecting it from the currents of the stream, or otherwise benefiting it, subject to the duty of so constructing the same as not to occasion material injury to the lands of others situate upon the stream, where the same may be avoided by the exercise of ordinary care, intelligence and foresight.

"It is his duty, in the first instance, to exercise such prudence and care as an ordinarily careful and intelligent man might have exercised, as to whether his proposed embankment would cause material injury to the lands of his neighbor at the time of such floods as might reasonably be anticipated at any season of the year.

"By material injury must be understood, an injury resulting in damages of a substantial nature; not merely nominal; and which are, in some cases, awarded to prevent a wrong from ripening into a right by lapse of time. The use of streams and their water is, among riparian proprietors, a matter of common right, and an invasion of the individual right of one, cannot be appreciated until some act is done by another in excess of the common right.

"Where a riparian owner constructs an embankment upon his own lands, that occasions substantial injury to the lands of a neighbor upon the stream, and which might, at the time, have been anticipated by a man of ordinary prudence and intelligence, he is liable in damages for the injury as occasioned. And where it appears from its subsequent action, though not at the time of its construction, that it does and will continue at ordinary floods, to do injury to his neighbor's lands, it then

becomes his duty. to abate, or so modify it as to avoid such injury, and he is liable in damages for an omission to do so.

"Where an adequate remedy, in the way of damages cannot be had, the court may, in a proper case, order the abatement of an embankment that occasions substantial injury to the lands of another."

So that, take all the authorities—and we think these authorities cite a large number of the cases—if we have found the facts from the evidence here, correctly, we think that the law, as applied in Crawford v. Rambo, *supra,* covers the case at bar, and therefore, the petition of the plaintiff will be dismissed at his cost.

We have found—as suggested by my associate—thus substantially upon the evidence of the plaintiff. This case was up before us once before on error, but we do not feel at all controlled or governed by whatever we might have thought or decided at that time. We have investigated the case anew, as if it had never been presented to us. We think this—if this embankment had been constructed after the recurrence of two or three of those floods, we would not have had any doubt in holding that those might be considered as ordinary floods that might be anticipated.