EAST BOSTON FERRY COMPANY *vs.* MAYOR & ALDERMEN OF THE CITY OF BOSTON.

Under § 2 of the St. of 1852, *c.* 244, which authorizes the East Boston Ferry Company to collect such tolls as the mayor and aldermen of Boston shall determine, and provides that the rates of toll shall never be so much reduced as to reduce the yearly dividends of the corporation to less than eight per cent. on the amount of its capital stock actually invested, the corporation is entitled to have those rates so fixed that upon its current business it shall have a right to receive at least the prescribed income; and to have new rates established accordingly by the mayor and aldermen, when the existing rates are insufficient for that purpose. And if upon an application of the company for the establishment of new rates, and proof of such insufficiency of the existing rates, the mayor and aldermen unreasonably refuse or neglect to act, *mandamus* will lie to compel their action.

PETITION filed in February 1869 for a writ of *certiorari* to quash proceedings of the respondents in relation to the rates of toll of the petitioners, and for a writ of *mandamus* to compel the respondents to raise those rates.

The petition alleged that the East Boston Ferry Company was a corporation under the St. of 1852, *c.* 244, for the purpose of establishing and supporting a ferry between the main land of Boston and the island of East Boston, and all the rights

powers, privileges and franchises, in said statute set forth or referred to, were vested in said corporation; that the ferry was established and opened for public use in 1852, and had ever since been maintained as a ferry for public use; that, by § 2 of said statute, the corporation was "bound to furnish all such accommodation for the transportation of persons, horses, cattle, carriages, wagons, goods and merchandise, as the mayor and aldermen of the city of Boston for the time being shall from time to time consider that the public convenience requires, and shall be allowed to collect and receive such tolls as the said mayor and aldermen shall determine, provided, however, that the rates of ferriage shall never be so much reduced as to reduce the yearly dividends of said company to an amount less than eight per cent. on the amount of capital stock actually invested;" that the mayor and aldermen from time to time ordered the corporation to furnish such accommodation for the purposes named in said statute as they considered that the public convenience required, and the corporation had at all times furnished all the accommodation so ordered; that the mayor and aldermen, by an order passed October 4, 1852, fixed the rates of toll to be charged by the corporation for ferriage, (a schedule of which was annexed,) and, with the exception of a term of years ending July 1, 1860, during which time it charged rates lower than those fixed by such order, the corporation charged and collected the rates fixed in manner aforesaid; that in 1854, and ever since, the amount of capital stock of the corporation actually invested was $225,000; that the net earnings of the corporation, ever since August 4, 1854, had not sufficed to enable the corporation to earn or pay any dividend whatever; that the rates of toll, fixed by the aforesaid order, were, and for more than eight years had been, so low, that the corporation had been and was unable to pay or earn any dividend upon its said capital; that the rates of toll were fixed by said order in the money of the United States, said money at that time, and until 1862, consisting solely of coined money in gold and silver, having a certain, well known and unchanging value; but that since 1862 lawful money had consisted of United States notes or promises,

which had fluctuated in value constantly, and been permanently depreciated below their nominal value in coined money; that this depreciation was such that at the time of the filing of the petition the nominal dollar was worth about seventy-four cents in coin, and had averaged in value much below that amount; that the effect of this depreciation was a substantial lessening of the actual or true value of the tolls received and fixed by said order, though the nominal amount remained the same; that while the actual receipts of the corporation were thus largely, and for a long period of time, curtailed, the expenses, both in the purchase of all supplies and material, and in the payment of labor, were largely increased by the direct and indirect effects of taxation, and by other causes following upon the late war; that, by reason of this increase of their expenses and depreciation of the currency, the corporation on October 5, 1868, presented to the mayor and aldermen its petition, setting forth in substance the foregoing allegations, and praying that the rates of toll might be increased to such an extent as would enable the corporation to earn and divide a yearly dividend of eight per cent. on its invested capital; that the mayor and aldermen, before the said petition was presented, knew the outlays and receipts of the corporation, and that it failed to earn eight per cent. as aforesaid; that the petition was duly referred, by the board of aldermen, to their committee on ferries, being the appropriate committee therefor, and the mayor and aldermen appointed a time for a hearing thereon, at which time the corporation appeared and was duly heard; that at an adjourned hearing remonstrants against the petition were duly heard, and its prayer was opposed on grounds of public policy, and inconvenience to the inhabitants of East Boston, but the facts alleged in the petition were neither disproved nor denied; that, after said hearings were finished, the petition was recommitted to said committee, and no further action was ever had thereon, and, notwithstanding the repeated and urgent requests of the corporation, said board neglected to take further action, and to grant the prayer of the petition, or in any manner to raise the rates of toll fixed by said order; that at said hearings the corporation

showed that the raising of said rates to the extent of fifty per cent. was necessary to enable the corporation to earn eight per cent. on its said capital, after paying its ordinary expenses; and that, after the petition had been thus presented to the mayor and aldermen, and after the truth of its allegations had been made to appear to the board, it became their imperative duty, by force of the provisions of said § 2 of the charter of the corporation, and especially by force of the proviso therein contained, to raise the rates of toll, which the corporation should thereafter be authorized to collect, to the extent proposed by the corporation, but the mayor and aldermen refused and unreasonably neglected to pass any order raising said rates of tolls, or to take any action for the relief of the petitioners.

The respondents filed a general demurrer, and the case was thereupon reserved by *Gray*, J., for the determination of the full court.

*C. H. Hill*, for the respondents, cited, to the point that *mandamus* did not lie, *Smith* v. *Mayor & Aldermen of Boston*, 1 Gray, 74; *Rice* v. *Commissioners of Highways*, 13 Pick. 225; *Morse, petitioner*, 18 Pick. 443; *Gibbs* v. *County Commissioners*, 19 Pick. 298; *Opinion of Justices*, 10 Gray, 613; *The King* v. *Justices of Kent*, 14 East, 397; *The King* v. *Justices of Middlesex*, 4 B. & Ald. 298; *The King* v. *Justices of Monmouthshire*, 4 B. & C. 844; *The Queen* v. *Justices of Bristol*, 22 Law Times, 213, and 3 El. & Bl. 479 note; *Ex parte Buller*, 1 Jur. (N. S.) 709; *Ex parte Metcalfe*, 6 El. & Bl. 287; *Ex parte Hoyt*, 13 Pet. 279; *Decatur* v. *Paulding*, 14 Pet. 497; *People* v. *Judges of Dutchess Common Pleas*, 20 Wend. 658; *Freeman* v. *Selectmen of New Haven*, 34 Conn. 406.

*F. E. Parker*, for the petitioners, cited, to the same point, *Rex* v. *Justices of Somersetshire*, 2 Stra. 992; *In re Inhabitants of Wooton*, 6 Price, 103; *People* v. *Supervisors of Columbia*, 10 Wend. 363; *Morse, petitioner*, 18 Pick. 443.

CHAPMAN, C. J. The St. of 1852, *c.* 244, § 2, regulating the tolls which the Ferry Company may charge, is very explicit in its provisions. The first clause binds the company to furnish all such accommodations for transportation as the mayor and

aldermen for the time being shall from time to time consider that the public accommodation requires. This provision consti tutes the mayor and aldermen a tribunal whose jurisdiction is final in respect to that matter. Whatever accommodations they may in their discretion require, the company must furnish. The next clause provides that the company shall be allowed to collect and receive such tolls as the mayor and aldermen shall determine. This makes it the duty of that board of officers to establish rates of toll; and if it stood alone and unrestricted, the nterests of the company in that respect would be committed to their discretion. But the legislature did not see fit to do this. They added another clause, which was evidently intended to protect the interests of the company, by placing an absolute limit upon the power of the board. It provides that the rates of ferriage shall never be so much reduced as to reduce the yearly dividend of the company to an amount less than eight per cent. on the amount of capital stock invested. A reduction of the tolls below this limit violates this provision, and is an act in excess of the authority conferred upon the board. And if the rates of toll are once properly established, but afterwards be- come insufficient, it is clearly implied that upon the application of the company the board shall, from time to time, establish new rates which shall be within the limits of their authority. Such a construction is required by the obvious policy of the act, which is, to protect the interests of the company as well as to provide for the accommodation of the public.

It is said in behalf of the board, that the duty imposed upon them is of a judicial nature, and that their decision, made in good faith, is final. But this does not take into view the limita- tion put by the act upon their authority. It assumes that they have as full power to reduce the tolls below the prescribed limit as to regulate them at or above that standard. This is plainly an error

It is further said that it may be impossible for the company to earn enough to amount to eight per cent. upon their capital stock invested, out of the traffic existing between Boston and East Boston. It is quite obvious that this may be true; and

that there may be such a lack of business as to make the invest-ment unprofitable at any rates of toll. The legislature, when framing the act, could not have failed to see that this might happen, and that the tolls might, under its provisions, be raised so high as nearly or quite to deprive the company of all patron-age. In that event the enterprise would prove to be a failure, and the company would be compelled to abandon it and dispose of their property as they best could. And from the nature of the enterprise it must have been obvious to all parties interested that there would be some risk that the profits would fall short of eight per cent. If this should happen through lack of busi-ness, the consideration that a high rate of tolls tends to diminish patronage and income would tend to restrain the company from asking to have them raised to a very high rate, and to be satis-fied with a rate that yielded less than eight per cent. If, on the other hand, the rates should be fixed so high as to produce more than eight per cent., (a rate of income which the legislature has deemed to be reasonable, in view of all the risks to be run,) the mayor and aldermen may lower them, from time to time, so as to keep the income down to that limit. In view of the whole matter, the fair interpretation of the clause is, that the rates shall be so fixed that upon the current business of the com-pany they shall have a right to receive, at least, the prescribed income. If the effect of this should be to diminish their busi-ness and make a further increase of rates necessary, they will be entitled to a further increase. If evils shall be produced thereby, the legislature have left them to correct themselves. If the enterprise proves a failure, it may be abandoned; or if the company find it for their interest to lower their rates they may do so. But so long as they comply with the requirements of the mayor and aldermen in furnishing accommodations, they have a right to demand that the requirements of the statute as to the rates of toll shall be observed.

The case stated in the petition is, that the mayor and alder-men have required of the company very expensive accommoda-tions for the public, and that these requirements have been complied with; that the company have not been able, at the

present rates of toll, to make any dividends; that they have petitioned the board to increase the rates of toll, and have had a hearing on their petition, and have proved such facts as entitle them to have the prayer of their petition granted. It is not alleged that the proceedings have been terminated by a dismissal of the petition, or by an adjudication of any kind, but that the board unreasonably neglect to proceed and·make any legal adjudication in the matter.

In such a case, the law should provide a remedy, and it is well settled that *mandamus* is the appropriate remedy to compel the defendants to decide the matter, and to make such a decision as they have authority by the statute to make. So far as it invests them with discretionary power, this court cannot by *mandamus* interfere with the exercise of that discretion ; but they may be required to act, and to act within the limits of their authority. *Chase* v. *Blackstone Canal Co.* 10 Pick. 244. *Smith* v. *Mayor & Aldermen of Boston,* 1 Gray, 72. See also the authorities cited by the respondents.

*Demurrer overruled.*