### PEOPLE *ex rel.* GARDENIER *v.* BOARD OF SUPERVISORS.

*(Supreme Court, Special Term, Columbia County.   August, 1888.)*

1. DISTRICT AND PROSECUTING ATTORNEYS—EXPENSES OF EXTRADITION OF FUGITIVE—LIABILITY OF COUNTY.

Rev. St. N. Y. pt. 1, c. 12, art. 7, § 89, providing that it shall be the duty of the district attorney to conduct all prosecutions for crimes and offenses cognizable in the courts of oyer and terminer, jail delivery, and general sessions in his county, does not authorize him to institute and prosecute at the expense of the county proceedings for the extradition of fugitives from justice, and *mandamus* will not lie to compel the board of supervisors to allow a claim for such expenditures by him.

2. SAME.

The board of supervisors are expressly prohibited from allowing such claim by Pen. Code, § 51, which prohibits any officer of the state from asking or receiving any fees or compensation of any kind for services rendered or expenses incurred in procuring the extradition of a fugitive, except upon an employment by the governor; it expressly appearing that the services in this case were not rendered under an employment by the governor.

Application for *mandamus.*   On demurrer to alternative writ.
*Cady & Haysradt,* for plaintiff.   *R. E. Andrews,* for defendant.

MAYHAM, J.   The relator obtained an alternative writ of *mandamus* directed to the board of supervisors of Columbia county, commanding them to pass upon, audit, and allow a claim of $4,013.05, or so much of the same as shall be found due the relator for services and expenses in proceedings in apprehending and extraditing one John H. W. Cadby from the British territory in North America, under the requisition of the governor of New York, made upon the president of the United States, and by him upon the British government in Canada.   The alternative writ shows the issuing of a warrant by a magistrate of Columbia county, in the state of New York, against the said Cadby, for an alleged forgery,—a felony under the laws of this state,—and that the said John H. W. Cadby had fled from the state of New York, and sought an asylum in the dominion of Canada.   That said crime was extraditable under treaty stipulations between the United States and Great Britain. That the said relator, as the district attorney of Columbia county, followed the said fugitive into Canada, and then instituted proceedings in the courts of the dominion for the arrest and detention of said fugitive.   That various proceedings were had in different courts and before different judges in the dominion of Canada by the relator, which finally resulted in lodging the said John H. W. Cadby in a British prison, in the prosecution of which large expenses were incurred in traveling by the relator, and board and subsistence furnished him and various persons in his employ as assistants, detectives, attorneys, and various other expenses particularly enumerated or stated in general terms in the schedule annexed to said writ, and referred to therein, and constituting in all the amount claimed by the relator.   The writ also showed that all these expenses were paid, and liabilities incurred, before the granting of a requisition by the governor of the state, or the president of the United States, and that no part of said expenses was incurred by the relator as the agent of the governor in executing the said requisition.   The writ also recited

that all the expenses charged in said bill were actually and necessarily incurred by the relator in proceedings which were necessary for, and actually undertaken for, the apprehension and extradition of the said John H. W. Cadby, and that they were severally reasonably worth the respective sums paid therefor; and alleges, on the information and belief of the relator, that they are all just and legal charges against the county of Columbia. The writ also recites the presentation of the account, duly verified, to the board of supervisors at their regular annual session in 1886, and that the board wholly neglected and refused to audit and allow the same, or any part thereof, or to pay or provide for the payment of the same. The writ concludes in the usual form, requiring the respondent to make return, etc. To this writ the defendants interpose a demurrer that the writ does not state facts sufficient to constitute an aggrievance, to redress which the command of said writ ought to have issued, or to have been allowed; that said writ does not state facts sufficient to constitute a cause why the command of said writ ought to be obeyed, or to entitle the said Aaron B. Gardenier to the relief asked in said writ, or to any relief, by way of *mandamus*, and does not state facts sufficient to constitute a cause of action. The office of a demurrer is to determine whether the allegations of fact upon which the relief demanded is sought to be obtained are sufficient in law to create a liability, and entitle the party to the relief demanded. The demurrer, therefore, admits the truth of all the allegations of fact, and takes issue upon the sufficiency of such allegation to constitute a cause for the granting of the relief asked for.

The demurrer in this case is to the entire writ, and all the allegations of fact and law therein, and raises the question whether any of the claims set forth in the writ constitute such a legal liability to the relator from the county of Columbia as that the board of supervisors may be compelled to audit and allow the same. The demurrer is to the whole writ, and not to any distinct or complete separate statement of fact contained in it, (Code Civil Proc. § 2076,) and the writ must therefore be considered as a whole. To sustain this writ it must appear upon the face of the same that the relator has a clear right to the relief demanded. *U. S.* v. *Bank*, 1 Cranch C. C. 7; *Smith* v. *Railroad Co.*, 67 Ill. 191. Nor will it be granted if the relator has a legal remedy. *People* v. *Judge*, 1 Mich. 359; *State* v. *Graves*, 19 Md. 351. Nor will it be granted to control the discretion of an officer or board where a discretion is by law conferred upon such officer or board. *Magee* v. *Supervisors,* 10 Cal. 376; *Ferry Co.* v. *Boston*, 101 Mass. 488. Nor to compel the allowance of a claim by a board or officer when they have a discretion as to the amount of the claim to be allowed for services. *Hull* v. *Supervisors*, 19 Johns. 259; *Ex parte Benson*, 7 Cow. 363. The determination of the questions raised upon this demurrer must therefore depend chiefly upon the question whether the claims made by the relator in this writ are such as, within the provisions of law relating to the office and duties of district attorneys and their compensation, the charges made in this writ and referred to in the schedule thereto annexed, are valid and legal charges against the county of Columbia, and such as the board of supervisors of that county are by law compelled to audit, allow, and provide for payment.

That the district attorney in this case exhibited commendable zeal and vigilance in prosecuting and bringing to justice an offender against the law goes without saying. By section 89, c. 12, art. 7, pt. 1, Rev. St., it is provided that "it shall be the duty of the district attorney to attend the court of oyer and terminer and jail delivery and general sessions to be held from term to term in the county for which he shall have been appointed, and to conduct all prosecutions for crimes and offenses cognizable in such courts." It is claimed by the relator that, as an incident to the right to conduct this criminal prosecution under the power conferred in this section, the relator, as district attorney, was authorized to institute and carry on at the expense of the county

all necessary proceedings for the arrest, detention, and production in court in the county of Columbia for trial the alleged fugitive from justice; and the arrest and detention in Canada were indispensable prerequisites to his extradition; and that, as such expenses were incurred by him as district attorney, and an officer of the county in the line of his duty, they were and are a proper charge, which may legally be enforced against the county. I cannot quite agree with the learned counsel for the relator in the extent to which he carries that provision. If his construction could be maintained, then it would not only be the privilege, but the duty, of the district attorney to follow a fugitive charged with the commission of a felony, not only into another state or country, but to another continent, and his pursuit would only be limited by the extent of the extradition treaties between the United States and foreign countries. Certainly no such power is conferred or duty imposed upon the district attorney by express provisions of law, can it be created by implication? If such a power can be established by implication, and without express warrant or authority of the statute, and the board of supervisors compelled by *mandamus* to audit and allow the claim, then the district attorney would be vested with unlimited power to expend the people's money, and the board of supervisors would be put in intermediate agency between the claimant and the people, to compel the satisfaction of the claim, and would be divested of all power to audit and allow or disallow claims against the county. By subdivision 3, § 4, tit. 2, c. 12, pt. 1, Rev. St., the board of supervisors of the several counties have power at their annual meetings "to examine, settle, and allow accounts chargeable against such counties, and direct the raising of such sums as may be necessary to defray the same." The duty here enjoined is one that the board of supervisors may be compelled to perform when the account is chargeable by law against the county, and not when it may be chargeable against the county by the board in the exercise of a judicial discretion. There is no express statute directing the district attorney to incur the expenses charged in this bill. The most that can be claimed is that the services rendered were for the arrest and detention of a party charged with crime, that they were rendered by and upon the request and employment of the district attorney, and that it is the duty of the district attorney to conduct prosecution for crimes and offenses cognizable before criminal courts of record in his county. But there is no statute which compelled the district attorney to incur such expense. In *People* v. *Supervisors*, 14 Barb. 56, the court use this language: "If services are rendered which are not provided for by statute, however meritorious, they are gratuitous, and the party is not entitled to compensation." In *People* v. *Lawrence*, 6 Hill, 245, the court holds that the supervisors, in auditing and allowing accounts, have only such powers as have been conferred upon them by the legislature; and I find no statute which confers authority on the supervisors of Columbia to audit and allow this claim. But if this case is one coming within the discretionary powers conferred on the board of supervisors by the legislature, the court cannot by *mandamus* interfere before with the supervisors by dictating the manner in which that discretion shall be exercised by the defendants. *People* v. *Supervisors*, 1 Hill, 367. Within the decisions above referred to, I do not see how this writ can be sustained on this demurrer.

But by section 51 of the Penal Code it seems clear that the legislature has by express enactment prohibited the board of supervisors from allowing this claim. That section prohibits any officer of the state from asking or receiving any fees or compensation of any kind for any service rendered or expense incurred in procuring from the governor of the state a demand upon the executive authority of a state or territory, or of the United States, or of a foreign government, for the surrender of a fugitive from justice, or for any services rendered or expenses incurred in procuring the surrender of such fugitive, or of conveying him to this state, or for detaining him there, except upon an

employment by the governor of this state. The writ in this case expressly shows that the services were not rendered under an employment by the governor. By this statute the claim for services and expenses is made illegal. If illegal, the board of supervisors were required to decline or refuse to audit and allow the same. The demurrer must, for the reasons above stated, be · sustained, and judgment for the defendant rendered thereon.