NICHOLAS S. MUNDY, Respondent, *v.* THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, Appellant.

*Damages for injury to real property — culvert traversing the overflow bed of a river — extraordinary flood — statute justifying an injury to private property — powers of a railroad corporation — allegation of a nuisance.*

In an action brought to recover damages for injuries to property alleged to have been sustained by a flood which, by reason of the defendant's embankment being an obstruction to the course of a river, and on account of the culvert therein being insufficient to carry off the water, caused the plaintiff's land to become flooded, where the evidence as to the cause of the flood is contradictory, a question of fact is presented to be determined by the jury.

The party constructing a dam should construct it in such a manner as to resist such extraordinary floods as may be reasonably expected occasionally to occur, and it is a question for the jury to determine whether a flood of an extraordinary character was such that it should have been anticipated and provided against. The same principle applies as to the construction of a culvert in an embankment traversing the overflow bed of a river.

Statutory sanction which will justify an injury to private property must be express, or must be given by clear and unquestionable implication from the powers expressly conferred, so that it can fairly be said that the Legislature contemplated the doing of the very act which occasioned the injury; and where the terms of a statute giving authority to a railroad corporation are not imperative but permissive, it does not confer license to commit an act which would otherwise be a nuisance, although what is contemplated by the statute cannot be done without so doing.

The powers granted to a railroad corporation are to be construed as privileges conferred, but upon the understanding that they shall be exercised in strict conformity to private rights, and under the same responsibility as though the acts done in execution of such powers were done by an individual.

When the complaint in an action alleged the obstruction by a railroad of the natural course of the water of a river by a culvert, and the insufficiency of the culvert, whereby water was thrown upon the plaintiff's property to his injury, a nuisance is in substance alleged, and if it be shown that one in fact existed, there is no statutory authority to relieve the defendant from the consequences thereof.

APPEAL by the defendant, The New York, Lake Erie and Western Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Chemung on the 15th day of May, 1893, upon the verdict of a jury for $1,400 after a trial at the Chemung County Circuit, and also from an order made at the Chemung County Special Term and entered in the office of the clerk of the county of Chemung on the 5th day of May, 1893, denying the defendant's motion for a new trial upon a case and exceptions.

*E. C. Sprague* and *D. C. Robinson*, for the appellant.

*Frederick Collin*, for the respondent.

MERWIN, J. :

This action is brought to recover damages sustained by the plaintiff by reason of a flood occurring on the 1st day of June, 1889. At that date, and for many years prior thereto, the plaintiff owned a farm situated on the northerly side of Chemung river in the town of Big Flats in the county of Chemung. This farm extended from the river northerly across the valley, a distance of about a mile. Through the farm and along the valley and some distance from the river, the railroad of the defendant passed in a direction easterly and westerly. The track was laid upon an embankment which was above the surface of the ground, and extended substantially straight, westerly to East Corning station, a distance from plaintiff's farm of about a mile and a half. The general direction of the river in that locality was from the west easterly. At East Corning station it came from the southwest, and ran near to the railroad embankment. It there made a sharp curve to the east and south, and thence it ran easterly beyond plaintiff's farm. The railroad was originally constructed by the New York and Erie Railroad Company in 1849. In 1861 it passed into the hands of the Erie Railway Company, and in or about April, 1878, the defendant became the owner.

In the complaint it is alleged that the embankment which the defendant maintained upon its lands in the vicinity of the farm of plaintiff was an obstruction to the course of the waters flowing naturally in and from the Chemung river in times of high water or freshets ; that the Chemung river is and always has been subject to

freshets and to a rise in the waters in the vicinity of plaintiff's farm, and prior to the building of such embankment such waters passed west and north of plaintiff's farm; that some distance west of plaintiff's farm the predecessors of defendant placed in the embankment a narrow culvert which was wholly insufficient for the passage of the waters of the river in times of floods or freshets, and that this was maintained by the defendant with notice that it was insufficient, and that by reason thereof the waters would be liable to pass along down on the southerly side of the embankment to the plaintiff's farm and to his injury; that in June, 1889, at the time of a rise and freshet in the waters of the river, the waters of the river overflowed its banks and came against the embankment, and then by reason of the embankment and the insufficiency of the culvert, were turned from their natural course and came down on the southerly side of the railroad to the plaintiff's farm, injuring the farm and the personal property thereon to the extent of $1,400; that prior to this time the plaintiff notified the defendant that the embankment and culvert were a nuisance, and liable in time of floods to cause great injury.

The defendant, in its answer, among other things, denied the insufficiency of the culvert, and alleged that the railroad was constructed and is maintained in a careful, skillful and proper manner.

From the evidence it appears that about a mile westerly of the plaintiff's farm, the embankment of the railroad passed over a considerable depression in the natural surface of the ground. This extended several hundred feet, the height of the embankment above the surface ranging from ten to four or five feet. In the embankment over this depression there was a culvert seventy-four feet wide with a pier in the center. This depression started at the bank of the river near the station at the point where the river came up and curved to the east and south. It was at the river about forty rods wide and extended beyond the railroad embankment northeasterly. The culvert was placed at right angles to the embankment so that the waters as they came down the depression or channel were required to turn northwardly in order to pass through. This depression was described by several witnesses as being the flood channel or watercourse with well-defined banks, which at times of

floods would take the overflow of the river at the curve and carry it northeasterly beyond the locality of the railroad embankment, and thence eastwardly until it reached Big Flats or Gardner's creek, and thence passed to the river below the plaintiff's farm. The overflow at times was said to constitute a good-sized river.

At the place on the river bank where this flood channel started, for the purpose apparently of stopping to some extent the overflow at that point, a dyke or embankment along the bank of the river for about fifty rods had been constructed in 1851 by the predecessor of defendant and another one in 1866. This in 1886 had become dilapidated, and at that time it was that the plaintiff notified the officers of the defendant that with the dyke in that condition the culvert in the railroad embankment would not in case of flood carry off the water, but that it would be thrown by the embankment onto the lands on the south side of the track and pass on down to the farm of plaintiff. It had done so to some extent at a flood in 1865 and the defendant was so informed.

The flood on June 1, 1889, was an unusual one. There had been similar floods in 1865 and in 1833, but not so large. There is no question about the plaintiff's property being in fact flooded and injured, and the question is whether the defendant is responsible for the injury.

The plaintiff at the trial claimed and gave evidence tending to show that the waters which came down upon and injured him came from the Chemung river at the curve where the dyke had been placed, and then passed down in the flood channel to the railroad embankment, where, by reason of the inadequacy of the culvert in position and size to afford passageway, they were turned eastwardly and along the south side of the railroad and passed down to plaintiff's farm, and that if the passageway at the culvert had been adequate the waters would have passed off to the north and east and his injury been avoided. The defendant claimed and gave evidence tending to show that the waters which injured plaintiff did not come from the river at the dyke, and were not cast upon the plaintiff by means of the embankment or want of passageway at the culvert, but were waters that flowed over onto plaintiff from other portions of the river, and were waters that were set back by reason of the waters of the river being dammed up at a gorge about three miles

below, and that the flood was so high that the plaintiff would have been overflowed just as much had there been no embankment at all over the flood channel at the culvert.   Whether the claim of the plaintiff or that of the defendant was correct was upon the evidence a question of fact and in effect was found in favor of the plaintiff. The evidence warranted the finding.

The defendant, however, claims that upon the undisputed evidence, the flood was so extraordinary that it should be said as matter of law that the defendant was not liable.

In *The Mayor, etc.,* v. *Bailey* (2 Den. 433, 441) it was said by the chancellor that a party constructing a dam should construct it in such a manner as to resist such extraordinary floods as might have been reasonably expected occasionally to occur.   This rule was approved in *Gray* v. *Harris* (107 Mass. 492), and it was there held that it was a question for the jury whether a flood of an extraordinary character was such that it should have been anticipated and provided against.   A like view is taken as applicable to a case like the present one in *The Ohio & Miss. R. Co.* v. *Ramey* (139 Ill. 9); *Same Co.* v. *Thillman* (143 id. 127); *Railway Company* v. *Pomeroy* (67 Tex. 498); *Borchardt* v. *The Warsau Boom Co.* (54 Wis. 107).   In *Hartshorn* v. *Chaddock* (135 N. Y. 116, 120) a recovery was sustained for damages from a flood occurring at the same date as in the present case, although the defendant claimed it was so extraordinary and unusual as to be deemed an act of God, it appearing that though the freshet was unusual with respect to the volume of water, yet that similar ones, but of less power, have occurred in the past and are liable to occur in the future.

The flood of 1889 was higher than ever before, but similar ones had occurred in 1833 and in 1865, and numerous others not so large.   It was shown that the river for many years prior to 1889 had been subject to sudden variations and heavy rises, and that there had been a steady increase in the floods, and that they rose quicker in later years than formerly.

We think that it should not be held that the flood was so extraordinary that the defendant was relieved from all liability.

It is further claimed by the defendant that it was authorized by law to construct its road upon its own land and is not liable under the rule laid down in *Moyer* v. *N. Y. C. & H. R. R. R. Co.* (88 N.

Y. 351). In that case damages had been awarded to the plaintiff as having been caused by the raising of the bed of defendant's road. It was said that there was no proof that that cause contributed in any way to the damage; that the defendant was authorized by law to construct its road upon its own land, and if it constructed it in a skillful and proper manner it could not be made responsible to persons receiving incidental or consequential damages; that there was no allegation or proof that it was unskillfully or improperly done, but it was found that the embankment was built in a workmanlike and skillful manner, and the case of *Bellinger* v. *R. R. Co.* (23 N. Y. 47) was referred to as sustaining the position that the defendant was not liable for consequential damages to any persons caused by the necessary and proper elevation of its roadbed, not in a channel of a stream, but on its own land. In the *Bellinger* case, which related to the same railroad as the *Moyer* case, it was said that the defendant was liable only on the basis of negligence. The *Bellinger* case was considered in the case of *Cogswell* v. *N. Y., N. H. & H. R. R. Co.* (103 N. Y. 10), and it is there said that the ruling in the *Bellinger* case was based on the fact that the company was authorized by statute to construct its road across the creek at the point where it was located, and that it, therefore, was liable only for such consequences as were attributable to a failure to exercise due care and skill in executing the statute authority. The *Cogswell* case was an action for damages for a nuisance in the maintenance of an engine house, and it was held to be no defense that it was necessary for defendant to have its engine house located where it was or that in the management thereof it exercised all practicable care. The rule was laid down that the statutory sanction which will justify an injury to private property must be express, or must be given by clear and unquestionable implication from the powers expressly conferred, so that it can fairly be said that the Legislature contemplated the doing of the very act which occasioned the injury; that where the terms of a statute giving authority to a railroad corporation are not imperative, but permissive, this does not confer license to commit nuisance, although what is contemplated by the statute cannot be done without. In *Morton* v. *Mayor, etc.* (140 N. Y. 207), a similar view is taken. In *Booth* v. *R., W. & O. T. R. R. Co.* (140 N. Y. 272) it is said to be

now the settled doctrine in this State that the powers granted to railroad corporations are to be construed as privileges conferred, but upon the understanding that they shall be exercised in strict conformity to private rights, and under the same responsibility as though the acts done in execution of such powers were done by an individual.

In the present case no statute authority is shown to relieve the defendant from the consequences of a nuisance, if one in fact existed, or to require the plaintiff to base his action on negligence simply. In the absence of such authority the ordinary rule of liability would apply.   (See Angell on Watercourses [6th ed.], § 331a; *Campbell* v. *Seaman*, 63 N. Y. 577; *People* v. *N. Y. C. & H. R. R. R. Co.*, 74 id. 302; *Brown* v. *Cayuga & Sus. R. R. Co.*, 12 id. 486.)   The complaint alleges an obstruction by defendant of the natural course of the water and the insufficiency of the culvert, by means of which the water was thrown upon plaintiff's property to his injury.   A nuisance is, in substance, alleged, and the evidence warranted the finding that one existed.   In the light of the later cases we fail to see how the *Moyer* case helps the defendant.   It is suggested by the defendant's counsel that the court at the trial turned the action substantially into one of negligence.   The rulings of the court, however, on this subject were not objected to by the defendant, and there appears no good reason for defendant to complain in that regard.

It is further claimed that the court erred in submitting to the jury the question whether the damage would not have occurred if the flood had not been of extraordinary character.

There were some expressions in the main charge to that effect, but it is doubtful whether there is any exception sufficiently definite to raise the question.   Besides, the charge in that respect was subsequently modified.   At the close of the charge, and after the disposition of some requests, the counsel for defendant excepted " to that portion of the instruction of the court which states that if the flood was extraordinary and caused the injury, the jury might still find for the defendant, notwithstanding the flood was of an extraordinary character."   To this the court replied, addressing the jury: " If you find that the defendant was negligent, and that such negligence caused the injury, and then find that the injury would have hap-

pened by such waters as might reasonably be expected, then the fact that the flood was extraordinary will not defeat the plaintiff's right of action." To this the defendant excepted. The defendant's counsel then said : " The court stated to the jury that if this had been an ordinary flood, and caused the injury, the defendant might be liable, if they could predicate negligence upon it ; and we except to that portion of the charge, the point we except to being that the flood being extraordinary they have not the right to consider it as an ordinary one for the purpose of imposing liability upon the defendant." To this the court replied that what he meant by that was, that if this flood was one which, in the judgment of the jury, the defendant in the exercise of reasonable care should have anticipated, then, if the injury was caused by the negligence of the defendant, it was liable. No exception to this was taken. The court had previously stated very distinctly what, in its judgment, was the measure of the duty upon the defendant. At the close of the plaintiff's evidence, and after denying the motion for nonsuit, the court held that the defendant has no other duty than to provide a sufficient waterway to take away the water that might reasonably be expected. This the defendant did not except to, and it has no good reason to complain of the rule. The same rule was repeated in the charge, and the jury were told that if in this respect the defendant failed to perform its duty, and such failure caused the injury, the fact that the flood was extraordinary would not relieve the defendant. In this there was no error prejudicial to defendant's rights. It would at most be the case of an injury arising without fault of plaintiff from two causes, for one of which the defendant was responsible, and, therefore, liable for the injury. (_Phillips_ v. _N. Y. C. & H. R. R. R._, 127 N. Y. 657.) The evidence warranted the jury in finding that the injury was wholly or partly the result of the negligence of defendant, and, therefore, the rule laid down in _Grant_ v. _Penn. & N. Y. C. & R. Co._ (133 N. Y. 657), and kindred cases cited by defendant's counsel, that a verdict must be based on something more than speculation, does not apply. In some cases it has been held that an apportionment of damages would be made. (_Washburn_ v. _Gilman_, 64 Maine, 163; _Chicago & N. W. Railway Co._ v. _Hoag_, 90 Ill. 339; _Nitro Phosphate & O. C. M. Co._ v. _London & St. K. D. Co._, L. R. [9 Ch. Div.] 503.) No

point, however, as to this was made at the trial, and it is not necessary here to consider it.

Our attention is called to a number of exceptions to rulings upon evidence. We, however, find no error prejudicial to the rights of the defendant. No point is made here on the subject of notice to the company. It would seem that notice to the division superintendent of the company who had charge of the road in the locality in question should be deemed to be notice to the company. (*Brayton* v. *N. Y., L. E. & W. R. R. Co.*, 54 N. Y. St. Repr. 763; *Quincy Coal Co.* v. *Hood*, 77 Ill. 68; *Fulton Bank* v. *N. Y. & Sharon Canal Co.*, 4 Paige, 137.)

The foregoing considerations lead to an affirmance of the judgment.

Hardin, P. J., and Martin, J., concurred.

Judgment and order affirmed, with costs.